## Seymour, Appellant, v. Rossman.

Argued June 21, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Stephen M. Feldman,* with him *Feldman & Feldman,* for appellant.

*Thomas B. Rutter,* with him *Harry A. Short, Jr., Alfred W. Cortese, Jr., Litvin and Rutter,* and *Pepper, Hamilton & Scheetz,* for appellees.

Opinion Per Curiam, November 11, 1971:
Order affirmed.

***

Concurring Opinion by Montgomery, J.:

I respectfully concur in the action of the majority in affirming the lower court in this case since it is my opinion that the plain wording of the wrongful death act, Act of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602, on the distribution to be made on recoveries thereunder is not subject to judicial change but that any such change as requested by the appellant in this case must be made by the legislative branch of our government.

The facts of the case are set forth in the dissenting opinion to be filed by my colleague, Hon. J. Sydney Hoffman, who has therein afforded us an ardent and characteristically brilliant plea for us to be more activist in interpreting the wrongful death act. Although it is unnecessary for me at this time to express an opinion on the merits of the appellant's contention, it is to be noted that Judge Hoffman's opinion reflects a jurisprudential principle which has gained considerable respectability in the present age. The long history of the wrongful death act, which has spanned more than a century, demonstrates considerable movement toward and judicial enactment of that philosophy.

It is remarkable that, the wrongful death act having existed for so long and endured considerable judicial interpretation, the legislature has remained somnolent throughout its history. Originally, the legislature did not provide for the method by which damages were to be computed in a wrongful death case. That legislative failure to act is one of the causes leading to the present appeal and to the anomalous situation referred to in Judge Hoffman's opinion, whereby damages recovered in wrongful death cases are not distributed in

proportion to the "loss" suffered by the individual survivors of the deceased. However, the anomaly is of the appellate courts' own making; for, as the act was subjected to constant judicial interpretation, our jurists continually veered away from the jurisprudential theories outlined in the first and leading case interpreting the act, *The North Pennsylvania Railroad Company v. Robinson,* 44 Pa. 175, 178 (1863), where the Court, enunciating the purpose of the act to be to discover the value of the life lost rather than to compensate the survivors of the deceased, stated: "The recovery is for the benefit of all the children, for the statute provides that the money so recovered shall be distributed in the same proportion amongst them, as in the case of the estate of an intestate. This answers the objection made, that none may recover but such of the children as are *injured* by the death. The law gives it to them all in equal proportions, and if we are careful to remember that the value of the life lost, to be estimated by a pecuniary standard, is what is to be recovered for, we shall fall into no such error as in supposing that none but those who can show some actual damage, are entitled to recover. If such were to be the rule, we should have the indecent spectacle of an investigation whether the loss of a parent or child was or was not in fact an advantage rather than a loss; for certainly, if none be allowed to recover but such as are able to show a pecuniary loss, the defendants would, with great apparent reason at least, be entitled to claim the right to prove the contrary, and to show peradventure that, by the death, the party suing may have succeeded to an estate, or, on the other hand, had been relieved from the burthen of maintenance. In case of the death of aged persons or helpless infants, we might expect in the application of such a rule to have the point discussed whether the death was an ac-

tual loss or gain. The law means not to open the door to anything so shocking. It treats the value of the life lost as a species of property, and gives it, where children sue, to them in the same proportions as the personal estate of an intestate is distributed. This is what the act says and means, and hence the propriety of joining all the children as plaintiffs."

It can be seen at once from the above excerpted language that the Court was interpreting the death act as allowing a valuation of the life of the deceased to be made, thereby creating an estate which could be passed on by inheritance. More close in time to the common law, with its absence of any right whatever being recognized by the State for damages recoverable for tortious death, it is understandable that the society of a century ago, as represented in both the legislative and judicial branches of our government, would also draw upon the concepts of the feudal system, with its ideas of property, and the reluctantly granted right of inheritance given by the State to its citizens, rather than the fully developed concept of the present day, that the State is but the arbiter between the clashing wills of private citizens and is not only the supreme, if sometimes benevolent, sovereign power.

Nevertheless, the legislature gave much when it enacted the wrongful death act. However, soon the judiciary began to cut down that broad gift. Through judicial fiat, the provable damages became, not what estate the deceased was likely to create in his lifetime (including the amounts given to his dependents) but the amount that the surviving eligible dependents could prove that they had lost. Having decided to so limit the total damages, our predecessor jurists easily strayed even farther from the letter of the act by limiting distribution of the damages to classes of relatives among which were eligible takers, as in the two cases relied

on by Judge HOFFMAN, *Lehigh Iron Company v. Rupp*, 100 Pa. 95 (1882), and *Lewis v. Hunlock's Creek & Muhlenburg Turnpike Company*, 203 Pa. 511, 53 A. 349 (1902). Nor is it difficult to understand the feelings of appellant, reflecting as she does the philosophy prevailing at this time, that she is entitled to the full amount of the recovery in this case, and that the time is ripe to appeal for a final judicial change in the law.

On the basis of the above reasoning, I cannot agree with the view expressed in 3 Goodrich-Amram §2201-38, that the act was "inexpertly drawn"; it is inequitable, or one should admit even for purposes of discussion "the social desirability of an anti-windfall construction of the act," at least insofar as the present action now before us is concerned. Any such criticism of the act should be made to the General Assembly, which may make such changes as would reflect the change in philosophy upon which this appeal is based.

CERCONE, J., joins in this concurring opinion.

———

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal contesting the distribution by the lower court of proceeds of a wrongful death action. The facts in the case have been concisely set forth by the lower court:

"[D]ecedent died intestate on February 2, 1966 leaving a widow and one minor child [by the deceased's first wife]. An action was brought charging the defendants with negligence which proximately caused the death of plaintiff's decident. This action included (a) claim[s] under the Wrongful Death Act. Ultimately, this case was settled. . . .

"A Petition for Approval of Compromise Settlement which was submitted to the Court provided, inter alia, for the allocation of $91,887.75 net proceeds to the Wrongful Death Act action and further provided that $87,703.75 of those net proceeds should be paid to plain-

tiff as the widow of the decedent and $4,184.00 should be paid to decedent's minor daughter [which sums represented their respective pecuniary losses arising from the death of the deceasd]. The Petition was approved and the Court entered its Order providing for this allocation on June 26, 1970, upon plaintiff's counsel's representation to the Court that there was no problem with regard to the approval of all interested parties, and the understanding of the Court that there was no objection to the allocation and distribution of the proceeds. . . . [T]he decedent's minor daughter later objected to the allocation of the proceeds under the Wrongful Death Act and filed (a) Petition and Rule."

Subsequently, the lower court reallocated the proceeds of the Wrongful Death Act action giving one half to the widow and one half to the minor child. In the opinion of the lower court this result was compelled because the Wrongful Death Act provides that the sum recovered shall go to "them in the proportion they would take [the deceased's] personal estate in case of intestacy. . . ." The Act of April 26, 1855, P. L. 309, §1, 12 P.S. §1602. The Intestate Act provides that where a deceased is survived by a spouse and one minor child, each of the survivors is entitled to one-half of the estate. Act of April 24, 1947, P. L. 80, §2, 20 P.S. §1.2.

The damages recoverable in a Wrongful Death Act action are, however, measured by the pecuniary loss suffered by the husband, widow, children or parents of the deceased "through deprivation of the part of the earnings of the deceased which they would have received from him had he lived." *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 647, 26 A. 2d 659 (1942).[1]

---

[1] These damages are equal to "[t]he present worth of the amount (those entitled to prove damages) probably would have received from (the deceased's) earnings for their support during the period of his life expectancy and while the family relationship continued between them, but without any allowance for mental

98

It is anomalous, therefore to distribute the damages recovered in a Wrongful Death Act action, which are predicated on the sum total of the loss of each of the individual survivors of the deceased, in strict accordance with distribution under the Intestate Act. This distribution would not correspond to the loss suffered either proportionally or in dollar terms by such survivors. The Wrongful Death Act does not compel this result.

While it is true that the Wrongful Death Act is "inexpertly drawn", it is susceptible to a common sense reading which will accord with the purposes of the Act. See Goodrich-Amram, 3 *Standard Pennsylvania Practice*, §2201-31. An applicable illustration of this is found in the leading case dealing with distribution of proceeds of a Wrongful Death Act action, *Lehigh Iron Co. v. Rupp*, 100 Pa. 95 (1882).

In *Lehigh*, the Court rejected the claim of the father of the deceased to an equal share with the widow of the childless deceased of the damages from the Wrongful Death Act recovery. "The argument in support of the (father's) claim is rested on the right to share with the widow as in cases of intestacy. . . . Had it been the legislative intent to give parents an equal right with the widow, when the deceased was childless [,however,] provision would have been made for the measurement of damages. The damages recoverable are for the injury to the relative rights of the surviving members of the family; and are compensatory in all cases. . . ." 100 Pa. at 99. In explanation of this statement the Court indicated that when "the provision of the statute for distribution under the intestate law applies, and strictly accords with the main object of the statute, which is a

suffering, grief or loss of companionship; in other words, the measure of damages is the value of decedent's life to the parties specified in the statute." *Skoda v. West Penn Power Co.*, 411 Pa. 323, 334-335, 191 A. 2d 822 (1963).

remedy for the loss to the family, [it will be literally applied]. The surviving members of the family are recompensed in damages for the deprivation. But if the parents take equally with the widow the main object of the statute is in part defeated. Besides, in some cases the parents would share with her, when if the deceased had not been married, they would have no right at all. In such case as the present, by sharing with the widow they take half what the loss was to her, when if their son had been single, they would only be entitled to the value of his services for less than two years [since he was 19 years of age at the time of his death]. Results so preposterous are not within the intendment of the statute. 100 Pa. at 99.

The reasoning in *Lehigh* was closely followed in *Lewis v. Hunlock's Creek and Muhlenberg Turnpike Company*, 203 Pa. 511, 53 Atl. 349 (1902). There the court rejected the claim of appellant, an adult child of the deceased, to share with the widow in the recovery made in a Wrongful Death Act action. The appellant child relied upon language in *North Pennsylvania Railroad Co. v. Robinson*, 44 Pa. 175 (1863), which was also relied upon by the lower court in the instant case, as supporting his right of recovery.[2] The *Lewis* court

---

[2] The lower court in determining that distribution should be made in accordance with an intestacy distribution relied upon *North Pennsylvania Railroad Co. v. Robinson*, supra, *Ferne v. Chadderton*, 363 Pa. 191, 69 A. 2d 104 (1949) ; *Godzieba v. Godzieba*, 393 Pa. 544, 143 A. 2d 344 (1958) and *Frazier v. Oil Chemical Co.*, 407 Pa. 78, 179 A. 2d 202 (1962). In *North Pennsylvania Railroad Co.*, which first interpreted the Wrongful Death Act, the defendant raised objection to adult children joining with minor children as plaintiffs in an action brought under the Act. The Court summarily dismissed this objection "although the question is raised by the plaintiffs in error as to the right of all children to join in the suit, yet I cannot see how they have any concern in the matter. It is enough for them that the children are the parties, for if they recover jointly they never can again recover." The Court, however,

found, however, that the "claim of appellants is founded on too broad and too literal an application of the concluding clause of the [Wrongful Death Act which provides that 'the sum recovered shall go to them in the proportion they would take in his or her personal estate in case of intestacy.']" Instead, the Court rea-

---

added that "it cannot be error if all join where the recovery is for the benefit of all. . . . [T]he recovery is for the benefit of all the children, for the statute provides that the money so recovered shall be distributed in the same proportion amongst them, as in the case of the estate of an intestate. This answers the objection made, that none may recover but such of the children as are *injured* by the death. The law gives it to them all in equal proportions, and if we are careful to remember that the value of the life lost, to be estimated by a pecuniary standard, is what is to be recovered for, we shall fall into no such error as in supposing that none but those who can show some actual damage, are entitled to recover." 44 Pa. at 178. The purpose of this rule was to avoid the indecent spectacle of an investigation concerning whether the death of the deceased was to the advantage of one member of a class and not to another.

On its face, therefore, *North Pennsylvania Railroad Co.* only addressed itself to distribution among members of the same class of beneficiaries, such as children of a deceased. It did not address itself to distribution to members of different classes such as in the instant case where the widow and the daughter of the deceased are at odds. The same is true of *Frazier v. Oil Chemical Co.*, supra, where illegitimate children are part of the class of children entitled to recover in a Wrongful Death Act action.

Both *Ferne v. Chadderton*, supra and *Godzieba v. Godzieba*, supra, strictly read go to the question of who is entitled to bring a Wrongful Death Act action, not to the question of distribution of proceeds from such an action. The Wrongful Death Act "relates to three entirely different classes of persons—*first*, the persons who are allowed to be plaintiffs in a representative capacity; *secondly*, the persons who are qualified to prove damages and the loss of expectable future contributions from the decedent; and *thirdly*, the persons who are to share in the proceeds of the judgment recovered in the action. Cases which consider the problems of the first and second classification are therefore not authoritative in any attempt to solve the problems of the third group." 3 Goodrich-Amran, *Standard Pennsylvania Practice*, §2201-31.

soned that since the appellant children were not pecuniarly injured as a result of the death of the deceased, they "having no right of action in themselves, acquired none from the right of the widow. It would be absurd to say that if the father had been a widower, appellants would have had no claim, but if he had married the day before his death, they would have become entitled to two thirds of what the widow might recover in her own right under the statute." 203 Pa. at 513, 515, 53 Atl. at 349-50.[3]

Allowing the minor child to share in the widow's loss in the instant case is equally absurd. The child lives with its mother who is the deceased's first wife and has no relation to the widow of the deceased. No interest in family harmony therefore dictates that compensation for the pecuniary loss to the widow should accrue to the child. Accordingly, the distribution ordered by the lower court violates the very clear expressions of policy and purpose in both the *Lehigh* and the *Lewis* cases.

I would vacate the final order of the lower court and reinstate its original order of distribution of June 26, 1970.[4]

---

[3] It should also be noted that the Court in *Lewis* in part repudiated the dicta in *North Pennsylvania Railroad Company*, supra. "The subject (in North Pennsylvania Railroad Company) was then (1863) new and there are some expressions in the opinion which would probably not be used now since the law has been more fully developed and distinctly defined." 203 Pa. at 515, 53 Atl. at 350.

[4] Appellant would have us consider on this appeal the constitutionality of the Wrongful Death Act with respect to its provision for the allocation of the recovery. Briefly, his claim is that if the Act allows one party to recover damages awarded on the basis of another party's loss this violates due process. Since I would not reach this result in the instant case, I do not reach the constitutional question.