Seymour, Appellant. *v.* Rossman.

Argued April 20, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Stephen M. Feldman,* with him *Feldman & Feldman,* for appellant.

*Thomas B. Rutter,* with him *Litvin and Rutter,* and *Hurwitz, Klein, Benjamin & Angino,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, November 30, 1972:

This matter arose from a trespass action based upon medical and dental malpractice proximately causing the death of Robert T. Seymour on February 2, 1966. Decedent was survived by his wife, H. Shaw Seymour, and a minor daughter of a prior marriage, Marcijean Seymour. Marcijean Seymour was sixteen and one-half years old on the date of the death of Robert T. Seymour. H. Shaw Seymour was decedent's wife of three years.[1]

After her appointment as administratrix, the surviving spouse brought suit under the Wrongful Death Act of 1855.[2] The complaint set forth the fact that the only beneficiaries entitled to recover were decedent's widow and Marcijean Seymour, his daughter by a prior marriage.[3] Following discovery proceedings and multiple pretrial conferences, the action was called for trial at which time the parties agreed to a settlement in the amount of $142,500.

Administratrix petitioned the Common Pleas Court seeking approval of the settlement and the proposed distribution of the proceeds. The petition alleged that, prior to the death of Robert T. Seymour, his daughter

---

[1] While the standing of H. Shaw Seymour to take an appeal as administratrix from the order of distribution made is questionable (*Hand's Estate,* 288 Pa. 569, 136 A. 864 (1927) ; 117 A.L.R. 99), she does have standing, and has appealed, in her individual capacity.

[2] Act of April 26, 1855, P. L. 309, §1, *as amended,* 12 P.S. §§1601, 1602.

[3] "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children or parents of the deceased and no other relatives . . . ." *Id.* §1602.

was entitled to benefit from her father's support to the extent of only $75.00 per month until June 1, 1967, and $125.00 per month from that date until July 31, 1970, pursuant to a court order evolving from the termination of decedent's first marriage. The petition accordingly proposed an allocation of $87,703.75 to the widow and $4,184 to the daughter. These amounts were deemed by petitioner to represent the beneficiaries' respective interests in the net value of the settlement of the wrongful death action where the amounts were fixed according to the actual pecuniary losses of each surviving relative occasioned by the death of Robert T. Seymour.

The Honorable Ethan Allen DOTY issued an order approving the distribution as proposed. Thereafter, the minor daughter filed a petition, by her mother and guardian, to vacate the order of distribution and to reallocate the net proceeds in equal shares between H. Shaw Seymour and Marcijean Seymour. Judge DOTY then ordered a distribution in equal shares of $45,943 to each.

The Superior Court affirmed per curiam. This Court granted a petition for leave to appeal from the judgment of the Superior Court.

The appeal presents the questions whether the Wrongful Death Act of 1855[4] and the Intestate Act of 1947[5] compel the *equal* distribution of the net proceeds of the settlement of a wrongful death action under the facts here presented and, if so, whether the application of the acts violates the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section 11, and Article III, Section 18, of the Pennsylvania Constitution.

---

[4] Act of April 26, 1855, P. L. 309, §1, *as amended*, 12 P.S. §§1601, 1602.

[5] Act of April 24, 1947, P. L. 80, §2, *as amended*, 20 P.S. §1.2.

The Wrongful Death Act, in pertinent part, provides: "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children or parents of the deceased, and no other relatives . . . *the sum recovered shall go to them in the proportion they would take* his or her personal estate *in case of intestacy. . . .*" (Emphasis added) Act of April 26, 1855, P. L. 309, §1, *as amended,* 12 P.S. §1602.

The intestate distribution referred to in the Wrongful Death Act, in the case where, as here, decedent is survived by his spouse and one child, is mandated by the Intestate Act of 1947: "The surviving spouse shall be entitled to the following share or shares: . . . . (2) One Child. One-half if the decedent is survived by one child only, or by no child, but by the issue of one deceased child. . . ." Act of April 24, 1947, P. L. 80, §2, *as amended,* 20 P.S. §1.2.

Notwithstanding the clear legislative mandate dictating the method of distribution of the proceeds of a wrongful death action, appellant argues that the results obtained by the Act's application are obtuse. It is argued that, since the Wrongful Death Act was enacted to compensate the dependent relatives of the deceased for the pecuniary losses suffered by them as a result of the death, the distribution of the recovery in equal shares among the possible beneficiaries will work injustice where the losses sustained are disproportionate. There is logical consistency to the argument that, since the wrongful death action is not intended to compensate the decedent, the proceeds of the action should not pass to the enumerated beneficiaries as though the recovery is part of the decedent's intestate personalty, but should instead be distributed among those who have suffered pecuniary losses in proportion to the actual loss suffered by each. While this reasoning is compelling, the Legislature has chosen the intestate method

of distribution. Under the circumstances we cannot disturb the plain meaning of the Act in the absence of strong contravening considerations.

Appellant has cited several cases in support of the proposition that this Court has previously recognized the absurdity of results which are possible when the Wrongful Death Act is strictly applied in factual situations like those presented by the subject case. *Siidekum v. Animal Rescue League*, 353 Pa. 408, 45 A. 2d 59 (1946); *Lewis v. Hunlock's Creek and Muhlenburg Turnpike Company*, 203 Pa. 511, 53 Atl. 349 (1902); *Lehigh Iron Company v. Repp*, 100 Pa. 95 (1882). In *Siidekum*, decedent was survived by her husband and mother. As the mother sustained no provable pecuniary loss at her daughter's death, decedent's husband was deemed the sole person entitled to the damages recovered for her wrongful death. Similarly, in *Lewis*, the deceased was survived by his widow and adult children. Since none of the children were dependent upon decedent, this Court held that the children were not entitled to any portion of the recovery even though the Intestate Act provided for a distribution of two-thirds of the proceeds among the adult children. Finally, in *Lehigh Iron Company v. Rupp* the decedent was survived by his widow and parents, the parents receiving no support from the deceased and thus suffering no pecuniary loss at his death. Here again, though distribution by intestacy would have necessitated the allocation of one-half of the proceeds to the parents, this Court awarded the entire recovery to the widow.

Each of these cases is factually distinguishable from the present case in the same material respect. In the subject case, Marcijean Seymour did, in fact, suffer pecuniary loss by the death of her father, albeit a less substantial loss than that suffered by decedent's surviving spouse. In the cited cases each beneficiary de-

prived of his intestate share suffered the uniform impediment of being incapable of proving *any degree* of pecuniary loss. Where decedent is survived by two classes of relatives, one of which has suffered a pecuniary loss by reason of his death and the other of which has not, the class suffering the loss is entitled to the entire recovery to the exclusion of the class which has suffered no loss. *Armstrong v. Berk,* 96 F. Supp. 182 (E.D. Pa. 1951).

Appellant next contends that the application of the Wrongful Death Act in the present case has worked a deprivation of rights guaranteed by the United States and Pennsylvania Constitutions.

Appellant urges that the division of funds according to the Intestate Act has no relevance to the purpose for which the action for wrongful death was created; that the Act arbitrarily affords substantially less protection to decedent's widow than his daughter; and that, therefore, the Act is violative of the constitutional guarantees of due process and equal protection.

Application of the Intestate Act for the purpose of distributing the proceeds of the wrongful death actions has here compensated decedent's daughter in excess of her actual pecuniary loss, while decedent's widow did not receive a full measure of compensation. Appellant would have us invoke the equal protection clause to *rewrite* the provision of the Wrongful Death Act which incorporates the Intestate Act. The Commonwealth possesses a large measure of discretion, however, in prescribing remedies for wrongs. It may prescribe remedies for the enforcement of rights, in the exercise of its discretion, without denying equal protection. *See, Scott v. Paisley,* 271 U.S. 632 (1926). While the distribution of proceeds by the Intestate Act may render unfortunate results under some circumstances, it remains for the Legislature, not the courts, to determine

whether inequities in the scheme warrant legislative change. *See Labine v. Vincent,* 401 U.S. 532 (1971).

Appellant claims that the Wrongful Death Act's incorporation of the Intestate Act is violative of the due process clause of the Fourteenth Amendment because it is irrelevant to the purpose for which the action for wrongful death was created.

No action to recover for wrongful death existed at common law. *See, Pennsylvania Railroad Company v. Zebe,* 33 Pa. 318, 328 (1858). The Legislature's enactment of the Wrongful Death Act conferred a new cause of action upon the statutorily enumerated heirs of the decedent. That the grant of rights was accompanied by the promulgation of a system of distribution of the funds recovered does not invalidate the Act when, in fact, the scheme is based on sound policy considerations. Incorporation of the Intestate Act into the Wrongful Death Act reduces the potential for intrafamily conflict by obviating the necessity for a jury determination respecting the apportionment of the wrongful death recovery among the beneficiaries. The procedure eases and simplifies the administration of wrongful death actions. It is thus relevant to the purpose of enactment.

It is urged that, because the Act as applied effectively denies decedent's wife her full measure of damages, the provision is violative of Article I, Section 11, and Article III, Section 18, of the Pennsylvania Constitution.

Appellant proffers the Article I, Section 11 provision insuring that "every man for an injury done him . . . shall have remedy by due course of law. . . ." *Thirteenth and Fifteenth Street Passenger Railway Company v. Boudrou,* 92 Pa. 475 (1880), is cited for the proposition that Article I, Section 11, prohibits the limitation of the amount of recovery to a sum less than

the actual injury suffered. The Wrongful Death Act, which mandates distribution of the damages awarded in a manner other than in direct proportion to the pecuniary loss actually suffered, is just as violative of Article I, Section 11, it is argued, as a provision which would limit the plaintiff in a personal injury action to a recovery of one half his actual damages. The analogy is too tenuous because the Wrongful Death Act sets no statutory ceiling on damages. *Boudrou* is inapposite.

Article III, Section 18, of the Pennsylvania Constitution provides that the Legislature may enact workmen's compensation provisions with maximum damage limitations. Section 18 provides that "in [no cases other than those involving workmen's compensation] shall the General Assembly limit the amount to be recovered for injuries resulting in death. . . ." We are not convinced, as appellant would have us decide, that the distribution of wrongful death damages according to the law of intestate succession may be equated with a maximum limitation on damages.

Order affirmed. Each party shall pay own costs.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

I agree with the reasoning and concur in the result reached by the majority. The expression of intent of the legislature that distribution of the fund recovered under the Wrongful Death Act of 1855[1] be distributed in accordance with the manner provided for distribution in the event of intestacy[2] is unmistakably clear. I am forced to take issue with the suggestion by the dissent that we are "faced with two clear alternatives". There is no ambiguity to resolve, the legislative mandate is not only clear, but grounded upon sound poli-

---

[1] Act of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602.
[2] Act of April 24, 1947, P. L. 80, §2, as amended, 20 P.S. §1.2.

cy.[3] In my view, the earlier cases upon which the dissent now relies[4] represent unwarranted and unjustified intrusions by the judicial branch into the domain properly within the purview of the legislative branch of government. I believe these cases were improperly decided and should not be given precedential value.

Mr. Justice MANDERINO joins in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am unable to join the majority's opinion which requires the proceeds of a wrongful death action to be distributed *equally* between appellant, who suffered a loss of $87,000, and one who suffered a loss of only $4,000. Therefore, I must dissent.

While conceding the "logical consistency" and "compelling" reasoning of appellant's argument the majority nevertheless concludes that appellant is not entitled to recover the actual pecuniary loss suffered as a result of decedent's death. Rather, the majority holds that a literal interpretation of the Wrongful Death Act[1] requires that appellant share the proceeds equally with the decedent's daughter by a previous marriage.

In construing the Wrongful Death Act this "[C]ourt is faced with two clear alternatives. Either the provisions of the Wrongful Death Act must be strictly followed and a distribution made under the Intestate Act, without regard to possible windfalls, or the act must be interpreted so as to prevent an inequitable benefit to particular individuals." 3 Goodrich-

---

[3] These reasons have been fully and accurately stated in the opinion of the majority. Interestingly, the dissent apparently did not accept the constitutional claims proffered by the appellant.

[4] *Lehigh Iron Co. v. Rupp*, 100 Pa. 95 (1882) ; *Lewis v. Hunlock's Creek & Muhlenberg*, 203 Pa. 511, 53 A. 349 (1902). *See also*, *Siidekum v. Animal Rescue League*, 353 Pa. 408, 45 A. 2d 59 (1946).

[1] Act of April 26, 1855, P. L. 309, §1, as amended, 12 P.S. §1602.

Amram, Standard Pennsylvania Practice §2201-31 at 134 (Supp. 1972). The majority selects the former approach and thus approves the conceded inequitable result.

As early as 1882, however, this Court specifically rejected a literal interpretation of the act which yielded a "preposterous" result. In *Lehigh Iron Co. v. Rupp,* 100 Pa. 95 (1882), the Court said: "When a husband or wife recovers damages, and there are children of the deceased, the provision of the statute for distribution under the intestate law applies, and strictly accords with the main object of the statute, which is a remedy for the loss to the family. The surviving members of the family are recompensed in damages for the deprivation. *But if the parents take equally with the widow the main object of the statute is in part defeated.* Besides, in some cases the parents would share with her, when if the deceased had not been married, they would have no right at all. In such case as the present, by sharing with the widow they take half what the loss was to her, when if their son had been single, they would only be entitled to the value of his services for less than two years. *Results so preposterous are not within the intendment of the statute."* Id. at 99 (emphasis added).

In *Lewis v. Hunlock's Creek & Muhlenburg,* 203 Pa. 511, 53 Atl. 349 (1902), this Court again rejected a "too literal an application" of the concluding clause of the act which provides that "the sum recovered shall go to them in the proportion they would take in his or her personal estate in case of intestacy."[2] Appellants in *Lewis* were children of the decedent who would take in his estate in case of intestacy. They argued that they were entitled to share in the proceeds awarded to the decedent's widow in the wrongful death action. The

---

[2] Id.

Court, however, held that, since the children were not injured as a result of the death, they could not recover.

"The appellants having no right of action in themselves, acquired none from the right of the widow. It would be *absurd* to say that if the father had been a widower, appellants would have had no claim, but if he had married the day before his death, they would have become entitled to two thirds of what the widow might recover in her own right under the statute." *Id.* at 515, 53 Atl. at 350 (emphasis added).

The result here is equally "absurd" and "preposterous", for the appellant, who suffered an economic loss twenty times greater than that of the daughter, is required to share equally in the proceeds. As Judge HOFFMAN noted in his dissenting opinion: "Allowing the minor child to share in the widow's loss in the instant case is equally absurd. The child lives with its mother who is the deceased's first wife and has no relation to the widow of the deceased. No interest in family harmony therefore dictates that compensation for the pecuniary loss to the widow should accrue to the child. Accordingly, the distribution ordered by the lower court violates the very clear expressions of policy and purpose in both the Lehigh and Lewis cases." *Seymour v. Rossman*, 220 Pa. Superior Ct. 92, 101, 283 A. 2d 495, 499 (HOFFMAN, J., dissenting opinion).

I would reverse the order of the Superior Court and reinstate the original decree of distribution which distributed the proceeds according to the actual loss suffered.

Mr. Justice POMEROY joins in this dissenting opinion.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

Were this a case of first impression and were we writing on a clean slate, I would feel compelled to hold,

as the court today does hold, that "we cannot disturb the plain meaning of [wrongful death] Act" and substitute some other method of distribution. The language of the Act is clear and unambiguous that the scheme of intestate distribution shall be followed; it is not necessary that the distributees be dependents of the deceased or shall have otherwise sustained pecuniary loss by his death.

The fact is, however, that for ninety years this court has read the Act with a judicial gloss which adds pecuniary loss as an essential ingredient to recovery for wrongful death. *Lehigh Iron Co. v. Rupp,* 100 Pa. 95 (1882), and the subsequent cases cited in the court's opinion; *Siidekum v. Animal Rescue League,* 353 Pa. 408, 45 A. 2d 59 (1946) ; *Lewis v. Hunlock's Creek and Muhlenburg Turnpike Company,* 203 Pa. 511, 53 Atl. 349 (1902). It is no answer to say that the deprived beneficiaries in those cases suffered no loss whatever by the death of their decedents, whereas the minor daughter here sustained a slight loss—slight because limited by the support agreement. That is a distinction without a difference.

Adherence to the principles of *stare decisis,* accordingly, enjoins us to hold that the daughter here is not entitled to share equally with her stepmother in the proceeds of this recovery, but only in proportion to her loss. This is not, as the majority fears, "to *rewrite* the provision of the Wrongful Death Act which incorporates the Intestate Act"; the rewriting, if such it was, was done long ago. The legislature has not seen fit to alter the statutory language to correct the "erroneous" judgment of this court in the cases cited. This is a factor which we may now legitimately consider in deciding what meaning to give today to the language in question. See the Statutory Construction Act, May 28, 1937, P. L. 1019, art. IV, §51, 46 P.S. §551; *Philadel-*

*phia Tax Review Board v. Smith, Kline & French Laboratories,* 437 Pa. 197, 210-11, 262 A. 2d 135 (1970) (JONES and POMEROY, JJ., dissenting, and cases cited therein). The legislature, by its silence, is presumptively satisfied with the equitable considerations which led the court long ago to avoid the absurd results ordained by too literal a reading of the statutory provision here involved. It is as unnecessary as it is unwise for us now to overrule decisions which have been acquiesced in by the legislature and have guided the lower courts in their decrees of distribution for three generations.

For the reasons indicated, I dissent from the opinion of the court, and join in the dissenting opinion of Mr. Justice ROBERTS.