**Michelle S. STECYK, et al.**

v.

**BELL HELICOPTER TEXTRON, INC., et al.**

**No. CIV A 94–1818.**

United States District Court, E.D. Pennsylvania.

June 21, 1999.

Eugne Mattioni, Mattioni, Mattioni & Mattioni, Ltd., Philadelphia, PA, for Michelle S. Stecyk.

Thomas R. Harrington, Patrick J. O'Connor, Cozen & O'Connor, Philadelphia, PA, Ann T. Field, Philadelphia, for Bell Helicopter Textron, Inc., Does, 1 through 5, Inclusive, Defendants.

Ralph G. Wellington, James D. Shupe, John K. Gisleson, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for General Motors Corporation, Movants.

## ORDER–MEMORANDUM

EDUARDO C. ROBRENO, District
Judge.

**AND NOW** this 21th day of **June, 1999,**
upon consideration of Michelle Stecyk's pe-
tition for approval of the Settlement for
the benefit of her minor son, a supplement
petition (doc. no. 304), and following two
hearings at which evidence was received,
and a scheduling conference with counsel
for the parties, it is hereby **ORDERED**
that the petitions are **DENIED IN PART
AND GRANTED IN PART.**

It is further **ORDERED** that the pro-
ceeds of the settlement shall be appor-
tioned and distributed as follows:[1]

| | | |
|---|---|---|
| 1) | Mattioni Ltd. for counsel fees: | $467,905.56 |
| 2) | Under the Wrongful Death Act: | |
| | Michelle S. Stecyk (spouse) | $458,002.01 |
| | Anthony L. Stecyk (son) | $452,766.87 |

It is further **ORDERED** that plaintiff's
counsel is authorized to release the settle-
ment funds held in escrow to plaintiff and
to the Mattioni law firm in the amount
listed above.

It is further **ORDERED** that plaintiff's
counsel shall petition the court with appro-
priate jurisdiction, the Court of Common
Pleas of Delaware County, for appoint-
ment of a guardian for the minor's estate
to administer the distribution of the mi-
nor's share of the settlement funds. *See*
Pa. R. Civ. P. 2206; *Sosenke v. Norwood,*
No. 91–2623, 1993 WL 512824, at *3
(E.D.Pa. Dec.6, 1993) (Bechtle, J.) (not
allowing distribution of settlement funds to
minor until a corporate guardian for minor
had been appointed by court with appro-
priate jurisdiction).

It is further **ORDERED** that the mi-
nor's share listed above shall be kept in
the escrow account and no further distri-
bution shall be made until further order of
this court.

The decision of the court is based upon
the following reasoning:

*Background.*

1. The present actions is one of four
consolidated diversity actions that arose
out of the crash of an experimental V–22
Osprey aircraft during a ferry flight near
Quantico, Virginia on July 20, 1992. Each
of the four cases proceeded on the theory
that the defendants' negligence caused the
crash. Prior to trial, two of the four plain-
tiffs settled—the present case for $1.5 mil-
lion and the other for $1.1 million. The
other two plaintiffs proceeded to trial
where the jury returned a defense verdict.
Before the court are Michelle S. Stecyk's
(hereinafter "plaintiff") petitions for ap-
proval of the portion of the settlement for
the benefit of her minor son. Specifically,
plaintiff requests the distribution of the
$1.5 million settlement fund in the amount
$632,215.91 to herself, $245,586.10 to her
minor son and $500,872.42 to her counsel.
On June 14, 1999, this court entered an
order finding that the settlement was fair
and reasonable and in the best interest of
the minor child. *See* Order of June 14,
1999 (doc. no. 306). In addition, the court
concluded that the costs in the amount of
$121,325.57, advanced by plaintiff's counsel
were reasonable and necessary, and per-
mitted counsel to deduct the costs from
the gross settlement. *Id.* The remaining
issues to be decided are: 1) the proper
apportionment of the wrongful death pro-
ceeds between plaintiff and the minor
child; and 2) the amount to be paid to
plaintiff's counsel for attorneys' fees.

*Jurisdiction and Applicable Legal Rule.*

2. The court has the authority
to approve the settlement under its inher-
ent duty to protect the interests of minors
and incompetents that come before it.[2]

---

1. *See* attached exhibit A for distribution
breakdown.

2. There currently is no local federal rule gov-
erning approval of settlements involving mi-
nors. However, a proposed rule has been
preliminarily approved by the Board of
Judges and the rule now has been published
for comments. The proposed rule provides:

See *Eagan v. Jackson,* 855 F.Supp. 765, 775 (E.D.Pa.1994). Because in this case the court is sitting in diversity, the court is required to apply the substantive law of the forum as would be applied by a state court. *Eagan,* 855 F.Supp. at 776 (concluding that approval of minor's compromise is controlled by substantive state law). Under Pennsylvania law, the law applicable in this case, the compromise or settlement of a minor's claim is allowed only upon approval of the court. *See* Pa. R. Civ. P.2039;[3] *see also* Pa. R. Civ. P. 2206(a) ("No action for wrongful death in which a minor ... has an interest shall be discontinued nor shall the interest of a minor ... be compromised or settled until the court ... approve[s] the compromise or settlement as being fair and equitable."). The purpose of this rule is to protect the interests of the minor. *Wilson v. Bensalem Township Sch. Dist.,* 27 Pa. Cmwlth. 609, 367 A.2d 397, 398 (1976). Thus, "[t]he Court must be prepared to substitute its judgment in the best interest of the minor for that of the Plaintiff's counsel, the guardian, or even the minor himself." *Collier v. Dailey,* No. 98–3261, 1998 WL 666036, at *1 (E.D.Pa. Sept.23, 1998) (*citing Roghanchi v. Rorick,* 1991 WL 275626, at *3 (E.D.Pa. Dec.23, 1991)).

### Worker's Compensation Settlement.

3. In a separate agreement, Boeing Vertol Helicopter, the decedent's employer, agreed to pay death benefits to plaintiff on her behalf and the behalf of her minor son in the amount of $115,000. The court agrees with plaintiff that it does not have jurisdiction over the portion of the settlement that pertains to the worker's compensation settlement. *See* 77 Pa. Stat. Ann. § 733 (West 1992) (requiring the department of labor within the state to examine and review any agreement between an employer and the employee's dependents to determine whether it conforms to the provisions of the Pennsylvania Workmen's Compensation Act and the rules and regulations thereunder). The worker's compensation settlement involves parties and issues not before the court and is subject to review in the appropriate state agency. Thus, the court will not make a determination regarding the proper distribution of the proceeds of the worker's compensation settlement.

### Allocation of wrongful death proceeds.

■ 4. Pursuant to the terms of the settlement agreement in this case, the defendants agreed to pay $1,500,000.00 to plaintiff for herself and on the behalf of her minor son. After deducting the costs and expenses, advanced by plaintiff's counsel, from the gross settlement amount, $1,378,674.43 remains to be distributed. Plaintiff requests allocation of the net proceeds of the settlement as follows: (a) counsel fees in the amount of $500,872.42; (b) wrongful death proceeds[4] to plaintiff in

3. Pennsylvania Rule of Civil Procedure 2039(a) reads in pertinent part:

> (a) No action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor.

Pa. R. Civ. P.2039(a).

4. After deducting an amount for loss of consortium and reimbursement for past support, plaintiff allocates the remaining amount, $526,681.21, to the wrongful death claim and none to the survival claim because the death of decedent was instantaneous and under Pennsylvania law, there can be no recovery for pre-impact fear, pain and suffering. *See Stecyk v. Bell Helicopter Textron,* No. 94–1818,

(a) No claim of a minor or incapacitated person or of a decedent's estate in which a minor or incapacitated person has an interest shall be compromised, settled, or dismissed unless approved by the court.

(b) No distribution of proceeds shall be made out of any fund obtained for a minor, incapacitated person or such decedent's estate as a result of a compromise, settlement, dismissal or judgment unless approved by the court.

(c) No counsel fee, costs or expenses shall be paid out of any fund obtained for a minor, incapacitated person or such decedent's estate as a result of a compromise, settlement, dismissal or judgment unless approved by the court.

Proposed Local R. Civ. P. for E.D. Pa.

the amount of $278,340.60; (c) $353,875.31 to plaintiff for loss of consortium and reimbursement for past support of her minor child; and (d) wrongful death proceeds to plaintiff's minor son in the amount of $245,586.10.

5. Plaintiff requested the allocations as set forth above based upon the following reasoning. First, following the deduction of $121,325.57 in costs, counsel fees in the amount of $500,872.42 were deducted, leaving a remaining balance of $877,802.01 to be apportioned between plaintiff and plaintiff's minor child. However, before this balance was distributed in accordance with state law, $296,251.31 was allocated to plaintiff for loss of consortium. Another allocation, in the amount of $57,624 was made to plaintiff for reimbursement for past support of her minor child. This reduced the net recovery apportioned to the wrongful death claim to $526,681.21. Thereafter, pursuant to the Pennsylvania Intestacy Laws, 20 Pa. Cons.Stat. Ann. § 2102 ("Intestacy Laws"), the first $30,-000 was allocated to plaintiff, which further reduced the amount of the wrongful death proceeds to be allocated between plaintiff and plaintiff's minor child to $496,681.21. After these calculations, the remaining $248,340.61 was equally distributed between plaintiff and plaintiff's minor child, pursuant to state law.[5]

6. The court will disallow plaintiff's proposed distribution. Under Pennsylvania law, beneficiaries of a wrongful death action share according to the law of intestate distribution. *See* 42 Pa. Cons. Stat. Ann. 8301(b) (West 1992); *see also Olden v. Hagerstown Cash-Register, Inc.,* 619 F.2d 271, 275 (3d Cir.1980); *Seymour v. Rossman,* 449 Pa. 515, 297 A.2d 804, 806 (1972). Pursuant to section 2102 of the

Intestacy Laws, if there are surviving issue, the surviving spouse is entitled to the first $30,000 plus one-half of the intestate share. *See* 20 Pa. Cons.Stat. Ann. § 2102(3) (West Supp.1999).

7. Plaintiff argues that loss of consortium is a separate element of damages outside of wrongful death and thus may be distributed in accordance with each beneficiaries individualized loss, and not pursuant to the Intestacy Laws. In the alternative, plaintiff argues that if loss of consortium damages are part of a wrongful death recovery, the court should determine what portion of the recovery is attributable to each beneficiaries' loss of consortium damages, before the court distributes the wrongful death proceeds pursuant to the state Intestacy Laws.

8. The court is not persuaded that it has the authority to allocate to the surviving spouse a separate recovery for loss of consortium aside from the wrongful death action proceeds and other than as directed under the Intestacy Laws. It is true that Pennsylvania law recognizes a spouse's separate loss of consortium action, as a derivative of the injured spouse's claim. *See Linebaugh v. Lehr,* 351 Pa.Super. 135, 505 A.2d 303, 304 (1986). However, a *surviving* spouse may not "maintain a separate cause of action for loss of consortium in addition to the action brought on behalf of the deceased spouse under the wrongful death statute." *Mease v. Commonwealth,* 145 Pa.Cmwlth. 407, 603 A.2d 679, 682 (1992). The reason for this is that "[t]o allow a surviving spouse to maintain a separate cause of action for loss of consortium in addition to the action brought on behalf of the deceased spouse under the wrongful death statute would permit a double recovery for the same death."

1998 WL 744087, at *8–11 (E.D.Pa. Oct.23, 1998) (McGlynn, J.). Accordingly, the court does not question this allocation between wrongful death and survival.

**5.** According to plaintiff's proposed distribution, plaintiff's minor child would actually receive $245,586.10. This amount represents

his wrongful death proceeds less the difference between his recovery for loss of consortium ($54,869.59) and the amount owed to plaintiff for reimbursement for past support ($57,624). Thus, his recovery was reduced by $2,754.51.

*Linebaugh*, 505 A.2d at 305. Thus, any loss of consortium damages to which a surviving spouse may be entitled are recoverable only pursuant to the wrongful death statute and are to be distributed according to the mandates of the Intestacy Laws.

9. *Slaseman v. Myers*, 309 Pa.Super. 537, 455 A.2d 1213 (1983), is not to the contrary. In *Slaseman*, the issue was whether the trial judge's award in a non jury trial of a wrongful death and survival action was adequate. *Id.* at 1215. Before vacating the verdict and remanding the case back to the trial court for the determination of a new award, the Pennsylvania Superior Court noted, when describing the wrongful death damages, that $8,000 of an approximately $11,000 award for wrongful death damages represented the surviving spouse's "pecuniary loss" because of her husband's death. *Id.* at 1218. The Pennsylvania Superior Court defined pecuniary losses as including the value of services the victim would have rendered to his family if he had lived. *Id.* However, neither the superior court nor the trial court ever made an allocation in the case on that basis, nor did either court conclude that the pecuniary loss was a separate element of damages outside of the wrongful death damages. In fact, the Pennsylvania Superior Court specifically recognized that wrongful death damages include an amount "to compensate the decedent's survivors for the pecuniary losses they have sustained as a result of decedent's death." *Id.*

10. The court also disagrees with plaintiff's alternative argument that because loss of consortium type damages are damages contemplated within the wrongful death statute,[6] the court should determine what portion of the wrongful death recovery is attributable to each beneficiary as loss of consortium damages, before it makes the distribution pursuant to the Intestacy Laws.

11. In requiring a court to follow the laws of intestate distribution, *see* 42 Pa. Cons.Stat. Ann. 8301(b),[7] the Pennsylvania legislature has decided how to allocate wrongful death proceeds. In doing so, the Intestacy Laws do not provide for a separate or an individualized distribution for loss of consortium damages. Thus, in a wrongful death action, any loss of consortium damages, which may be part of the entire wrongful death recovery, are to be distributed among all beneficiaries under the statutory formula for distribution of wrongful death proceeds. While other jurisdictions have utilized an individualized loss formula in determining how to apportion wrongful death damages among beneficiaries, *see* N.Y. Jur.2d *Death* § 416 (1984) (explaining that under New York law, wrongful death damages are usually proportioned according to the life expectancy of the widow and the period of minority of a any surviving child), Pennsylvania has not adopted such a formula and instead relies on the Intestacy Laws for a distribution formula.[8]

---

6. Recovery in a wrongful death action includes damages for the loss of the decedent's society, which is also the essential nature of a claim for loss of consortium. *See Mease*, 603 A.2d at 682.

7. Section 8301(b) states that "[t]he damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth." 42 U.S.C. § 8301(b).

8. Plaintiff generally refers to certain instructions of the Pennsylvania Suggested Standard

Civil Jury Instructions as further support for the contention that plaintiff may recover in an amount greater than 50% (plus the first $30,-000). While plaintiff has not provided the court with a citation to a particular instruction, it appears that sections 6.01(L) ("Loss of Consortium") and 6.10 ("Damages in a Death Case") are the ones referred to by counsel. *See* Pa. SSJI (Civ) §§ 6.01L & 6.10. Even assuming that these suggested instructions supported plaintiff's position, and the court concludes that they do not, contrary to plaintiff's suggestion, the Pennsylvania Suggested Standard Jury Instruction have not been endorsed by the Pennsylvania Supreme Court as the current statement of the law on each point

■ 12. Similarly, the court also concludes that in an action for wrongful death, a surviving spouse is not entitled to a credit from the proceeds of a wrongful death action for past support of a minor child. The court notes that Pennsylvania imposes an independent common law duty upon the parent to support a minor child, *see Blue v. Blue,* 532 Pa. 521, 616 A.2d 628, 632 (1992) (holding that a parental duty of support is owed until child reaches 18 or graduates from high school, whichever event occurs later), and that nothing in the wrongful death statute modifies such a duty. The only case cited by plaintiff, *Allison v. Powers,* 179 Pa. 531, 36 A. 333 (1897), is not apposite. The question in *Allison* was "whether the money recovered by the widow for the death of her husband may be retained by her for the use of herself and family, or is it to be distributed among herself and children under the intestate law." *Allison,* 179 Pa. at 532–33, 36 A. 333. The Pennsylvania Supreme Court found that the children had an interest in the money received by their mother and thus the money should be distributed to them in the proportion they would take under the intestate law. *Id.* at 535, 36 A. 333. While, in the final order, the Pennsylvania Supreme Court did "allow [the mother] credit for the several amounts charged in her account against the interest of [her son] …", *id.* at 536, 36 A. 333, it is entirely unclear why such a credit was given as the Pennsylvania Supreme Court offered no further explanation. Finally, the court notes that the issue of reimbursement for past support was never discussed in the Pennsylvania Supreme Court's opinion.

13. Thus, in the face of the clear and unambiguous statutory mandate providing the framework for the distribution between the spouse and surviving issue, the court will follow the distribution formula and distribute the proceeds equally between plaintiff and plaintiff's minor child, after allocating the first $30,000 to plaintiff. *See Seymour,* 297 A.2d at 806 (concluding that because the legislature has chosen the intestate method of distribution of wrongful death proceeds, court must follow the mandates of the act).

*Counsel fees.*

14. In approving the settlement, the court must also fix counsel fees. *See* Pa. R. Civ. P.2039(b); [9] *see also* Pa. R. Civ. P. 2206(c) ("In approving a compromise or settlement … the court may also approve an agreement for the payment of counsel fees and other proper expenses out of the share of damages to which the minor … is entitled."). In this case, plaintiff entered into an agreement with counsel to allow counsel to recover 36.33% of the settlement proceeds, if counsel was required to advance more than $75,000 in costs, which in this case counsel did. "Under Pennsylvania law, when a trial judge determines the amount of reasonable attorneys' fees in cases involving minors, the judge is not bound to all the terms of a contingency fee agreement." *Sosenke v. Norwood,* No. 91–2623, 1993 WL 512824, at *3 (E.D.Pa. Dec.6, 1993) (*citing Estate of Murray v. Love,* 411 Pa.Super. 618, 602

and the instructions remain, just that, suggestions. *See* Gilbert G. Ackroyd, *Introduction* to Pa. SSJI (Civ) at v. (1981) ("It should be stressed that the instructions in this volume have not been approved by the Supreme Court of Pennsylvania. Consequently, these instructions represent only the best judgment of the Civil Instructions Subcommittee as to what an appropriate instruction might be on the matters covered by a particular instruction.").

**9.** Pennsylvania Rule of Civil Procedure 2039(b) provides:

(b) When a compromise or settlement has been so approved by the court … the court, upon petition by the guardian or any party to the action, shall make an order approving or disapproving any agreement entered into by the guardian for the payment of counsel fees and other expenses out of the fund created by the compromise, settlement or judgment; or the court may make such order as it deems proper fixing counsel fees and other proper expenses

. . . .

Pa. R. Civ. P.2039(b).

A.2d 366 (1992); *Gilmore v. Dondero,* 399 Pa.Super. 599, 582 A.2d 1106 (1990)), *aff'd,* 37 F.3d 1489 (3d Cir.1994). The task of the court is "[to] strike a balance between being a 'passive pro forma rubber stamp' . . . and being too intrusive in its consideration of the fairness of counsel fees." *Collier,* 1998 WL 666036, *2 (*quoting Gilmore,* 582 A.2d at 1109).

■ 15. In determining the amount of counsel fees that should be awarded, the court will apply the two step process approved by the Pennsylvania Superior Court in *Gilmore. Id.* at 1109–10 (approving trial court's application in determining fee award, of the then in place Chester County Court of Common Pleas local rule providing for a 25% presumptive lodestar, in addition to the *LaRocca* factors). The court will first consider whether the court of common pleas in the county with jurisdiction over the minor, has adopted an appropriate presumptive lodestar for such cases and whether the requested fee is reasonable in light of such a rule. *Collier,* 1998 WL 666036, *3.[10] In this case, the Court of Common Pleas of Delaware County is the court with jurisdiction over the minor. The local Delaware County rule governing settlements of minor's actions provides for a presumptive lodestar of 25%.[11] *See Delaware County Local Civil Court Rule* 2039(b)(1) (stating that "[i]f the proposed distribution includes a claim for counsel fees in excess of 25 percent of net (after expenses incurred by counsel) settlement, evidence shall be presented as to the nature and extent of services rendered."); *cf. Philadelphia Ct. of C.P. Local Civil Rule* 2039.1(F) (presumption that counsel fees "in the amount of one-third of net fund recovered" reasonable).

■ 16. Once the presumptive lodestar, if any, is established, the court then adjusts the presumptive lodestar by weighing certain factors which the Pennsylvania

Supreme Court has directed should be considered in determining if a request for attorney's fees is reasonable: (1) the amount of work performed; (2) the character of services rendered; (3) the difficulty of problems involved; (4) the importance of litigation; (5) the degree of responsibility incurred; (6) whether the fund involved was "created" by the attorney; (7) the professional skill and standing of the attorney in his [or her] profession; (8) the result the attorney was able to obtain; (9) the ability of the client to pay a reasonable fee for the services rendered; and (10) "very importantly" the amount of money in question. *See In re Trust Estate of LaRocca,* 431 Pa. 542, 246 A.2d 337, 339 (1968).

17. In this case, plaintiff's counsel requests fees in the amount of $500,872.42, pursuant to a fee agreement signed by plaintiff on her behalf as well as on behalf of the minor. The court, of course, is not free to inquire into the reasonableness of the private agreement reached between counsel and plaintiff as it applies to plaintiff herself. Thus, plaintiff's counsel is entitled to 36.33% of plaintiff's own net recovery. However, the court has a duty to determine the reasonableness of the fees requested by counsel as applied to plaintiff's minor child's share of the wrongful death proceeds.

■ 18. Applying the factors articulated by the Pennsylvania Supreme Court, the court considers the following calculus: On the one hand, this is an aviation crash case involving complicated legal and factual issues. Counsel invested more than 7,000 hours in this case over a seven year period. The case was very labor intensive, requiring in excess of 45 depositions, the briefing of numerous summary judgment motions and participation at *Daubert* hearings. In addition, counsel incurred a considerable risk of loss, as it is clear that the

---

**10.** Such a presumptive lodestar is reflective of practice and custom in the local area. *See Gilmore,* 582 A.2d at 1110.

**11.** Delaware County rules would apply because plaintiff and plaintiff's minor child are residents of that county.

outcome of this type of litigation, in general, and this case in particular, was uncertain.[12] Furthermore, counsel advanced more than $240,000 in costs to successfully prosecute this case.[13] Lastly, counsel was able to successfully negotiate a significant recovery for the plaintiffs.

19. However, on the other hand, the expenses in this case were shared with two other law firms representing the other plaintiffs. *See supra* n. 13. In addition, counsel recovered approximately $261,000 from Ms. Stecyk's share of the recovery and over $200,000 in additional fees from one other settling plaintiff whom counsel represented in this case. Thus, counsel's total recovery will be in excess of $600,000 for essentially the same work involved in the prosecution of this case. Lastly, by settling before trial, counsel short-circuited a significant amount of time and expenses that would have been incurred during a long trial.[14]

20. Beginning with a presumptive lodestar of 25% and after applying the *LaRocca* factors, the court concludes that a reasonable attorney's fee in this case, as applied to the minor child, is 31.33%. This figure represents a significant upward adjustment from the presumptive lodestar of 25%, but less than the 36.33% agreed upon by plaintiff and counsel in the contingent fee agreement.

21. In conclusion, the court finds that it does not have jurisdiction over the proceeds from the worker's compensation settlement and will make no determination regarding the proper distribution of those proceeds. In addition, the court concludes that the proceeds from the wrongful death action must be distributed, after deducting costs and expenses, in accordance with the Pennsylvania Intestacy Laws. Thus, plaintiff is entitled to the first $30,000 plus one-half of the remainder with the balance to be distributed to plaintiff's minor child. Lastly, the court concludes that plaintiff's counsel is entitled to 36.33% of plaintiff's own recovery and 31.33% of plaintiff's minor child's share.

**AND IT IS SO ORDERED**

## EXHIBIT A

| | |
|---|---|
| **Total Settlement Amount (Gross Recovery):** | $1,500,000.00 |
| **Costs:** | − $121,325.57 |

| **Net Recovery:** | $1,378674.43 |
|---|---|
| **Recovery for Michelle Stecyk:** | **Recovery for Anthony Stecyk:** |
| $689,337.22 | $689,337.22 |
| + $30,000.00 | − $30,000.00 |
| $719,337.22 | $659,337.22 |
| **Attorneys' Fees:** | |
| $719,337.22 | $659,337.22 |
| × 36.33% = $261,335.21 | × 31.33% = $206,570.35 |

12. The court notes that two other plaintiffs proceeded to trial on the same theory of liability and that the trial ended in a defense verdict.

13. This represents the total cost for both this case and another related case. Counsel split the cost evenly between the two parties. Only $121,325.57 of the costs are applicable to these proceeds.

14. The cases that did proceed to trial lasted over a month and the trial may have been significantly longer had this case been tried at the same time.

**Total Recovery:**

**Michelle Stecyk:**

$458,002.01

**Anthony Stecyk:**

$452,766.87

**Total Attorneys' Fees (at 36.33%/31.33%):**

$261,335.21 + $206,570.35 = $467,905.56 [15]

---

**15.** Plus approximately $200,000 to be paid to counsel as share of the counsel fees in related case.