411 A.2d 252

Patricia Ann MANNING, Administratrix of the Estate of
Clarence Manning, Deceased

v.

David CAPELLI and Panelrama, Inc.

**Appeal of Linda CIVITELLA.**

Superior Court of Pennsylvania.

Argued June 6, 1979.

Filed Sept. 28, 1979.

Petition for Allowance of Appeal Feb. 8, 1980.

Howard T. Gathright, Doylestown, for appellant.

Paul R. Beckert, Jr., Fairless Hills, for appellee Manning.

James C. Bowen, Sellersville, did not file a brief on behalf of appellees Capelli and Panelrama, Inc.

Before PRICE, GATES * and DOWLING *, JJ.

DOWLING, Judge:

This is an appeal from the order of the court below confirming distribution of the proceeds of a wrongful death action pursuant to a schedule of distribution submitted by the appellee, Patricia Ann Manning, Administratrix of the estate of the deceased. The sole question presented for our determination is whether appellant, Linda Civitella, an adult, emancipated child of the deceased, is entitled to share in the distribution of damages, when the deceased has also left surviving minor, unemancipated and/or dependent children.

The appellant is the daughter of the deceased by a prior marriage. The deceased and appellant's mother were separated when appellant was eight months old, and divorced when appellant was two years old. From the time of her

---

* President Judge G. Thomas Gates of the Court of Common Pleas of Lebanon County, Pennsylvania, and Judge John C. Dowling of the Court of Common Pleas of Dauphin County, Pennsylvania are sitting by designation.

parents' separation through the remainder of her minority and up to her father's death, appellant had lived apart from the deceased's home and had received no support, financial or otherwise, from the deceased.

As a result of the deceased's accidental death, a wrongful death action was instituted by the surviving spouse as administratrix of her husband's estate, eventuating in a compromise settlement. The court below distributed ⅓ of the proceeds to the surviving spouse, and the remaining ⅔ equally among the deceased's two unemancipated minor children and one adult, dependent child. The appellant filed exceptions arguing that she has been improperly excluded and praying for ¼ of the proceeds distributed to the deceased's children. Upon denial of her exceptions by the lower court, appellant brought this appeal.

We are asked to determine whether Pennsylvania's Wrongful Death Statute, Act of April 15, 1851, P.L. 669, authorizes appellant to participate in the aforesaid distribution, notwithstanding her being an emancipated and financially independent adult.

The Wrongful Death Act of April 15, 1851, P.L. 669, as amended by the Acts of April 26, 1855, P.L. 309, and June 7, 1911, P.L. 678 (12 P.S. § 1601 et seq.) created a right of action unknown to the common law in cases where death resulted from violence or negligence and no suit was brought by the injured party in his lifetime. After first establishing the right of action, the Act provides that: "The persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives; . . . and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy . . . ." 12 P.S. § 1602. Under the Intestate Act of April 24, 1947, P.L. 80 (20 P.S. § 1.1 et seq.), where there is a surviving spouse and more than one child, one-third of the estate of the decedent goes to the widow and the remainder is divided equally among the children.

The application of the Wrongful Death Act has caused some difficulty. Its purpose is to compensate certain enumerated relatives of the deceased for the pecuniary loss occasioned to them through deprivation of the part of the earnings of the deceased which they would have received from him had he lived. *Pezzulli, Admr. v. D'Ambrosia*, 344 Pa. 643, 647, 26 A.2d 659, 661 (1942). Accordingly, it was early held in *Gaydos v. Domabyl*, 301 Pa. 523, 152 A. 549 (1930), that only those persons who stand in a family relation to the deceased are statutorily authorized to recover damages. Moreover, such a "family relation":

" . . . [e]xists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts. The term 'family relation' as thus used does not embrace its comprehensive definition, but is confined to certain phases of family relation between the persons named in the act. . . . Before there can be any recovery in damages by one in that relation for the negligent death of another in the same relation, there must be a pecuniary loss. Id., 301 Pa. at 529, 152 A. at 551–552.

Under the facts of the present case, the appellant suffered no pecuniary loss as a result of her father's death, and therefore would be excluded from distribution.

However, in the context of elaborating on its holding that damages awarded in a death action must be specifically proven and individually measured, the *Gaydos* court, using a very broad brush, proceeded to distinguish those persons entitled to sue under the Wrongful Death Act from those persons entitled to share in the distribution of proceeds recovered. Wandering afield from the issue before it, the court stated that while a death action could not be maintained except by a surviving spouse, parent or child who sustained pecuniary damage by reason of the deceased's death, once such a relationship and loss had been shown, all members of that particular class were entitled to an equal

per capita share of the damages awarded to the class as a whole. "Where all sue and less than that number have been damaged, the verdict must be confined to the loss shown . . . even though the verdict and distribution of the amount, under the Act, must be made among all the children." Id., 301 Pa. at 532, 152 A. at 553. It is primarily this dictum, and the trial court decisions which have applied and allowed adult, emancipated children to share in the proceeds distributed to the minor, dependent children of the deceased, upon which the appellant relies. *Edelman v. Flyte*, 19 D. & C.2d 680 (1959); see, *Cullison v. Hartman*, 9 D. & C.2d 359 (1956).

Initially, it is important to note that there is no appellate authority in our jurisdiction actually ruling on the precise issue before us today, to wit, whether monies recovered under the Wrongful Death Act and intended as compensation for the damages suffered by the decedent's minor, dependent children are to be distributed among all of the deceased's surviving children, minor or adult, dependent and emancipated. The problem presented is well expressed in 7 Goodrich-Amram Procedural Rule Service, § 2201:31.1:

"Apparently, the Supreme Court so far has merely approved the total exclusion of a class of survivors under the Intestate Act if no member of that class has probable damages. . . . The court has not yet entered into the more difficult analysis of the rights of individual members of a class, in order to determine whether one or more of them should be excluded as though they had not in fact survived the decedent.

The court is faced with two clear alternatives. Either the provisions of the Wrongful Death Act must be strictly followed and a distribution made under the Intestate Act, without regard to possible windfalls, or the Act must be interpreted so as to prevent an inequitable benefit to particular individuals."

For the following reasons, we are persuaded to follow the latter course. It is settled beyond dispute that only persons standing in a "family relation" with the de-

ceased, hereinbefore defined to require pecuniary loss, and statutorily authorized to maintain a wrongful death action as a result of the deceased's death. In incorporating the intestate method of distribution, the Wrongful Death Act neither creates a new right of action, nor extends the one previously established. Consequently, the Act's provision that the sum recovered shall go to the beneficiaries named in the proportion they would have inherited the intestate property of the deceased must be construed in light of the right of action to which it refers and pursuant to which damages were awarded in the first instance. Where, as in the case before us, the persons seeking to share in the distribution are admittedly without standing, for want of pecuniary loss, to initiate a death action in regard to the deceased parent, it would frustrate the statutory purpose of compensating the very real damages suffered by the deceased's minor, dependent children to hold that an adult, emancipated child is entitled to a per capita share of the death proceeds solely because under the intestacy laws emancipated children may inherit intestate property of a deceased parent. The right to recover damages should not be more extensive than the right to bring the initial action. The intestate scheme for distributing proceeds is necessarily limited by the parameters of the right of action created by the Wrongful Death Statute.

Accordingly, we are of the opinion that it is incumbent for one seeking to procure a share of wrongful death proceeds to prove the family relationship and pecuniary loss before he may be included in the distributional schedule.

We find support in the Supreme Court's holding in *Lewis v. Hunlock's Creek and Muhlenburg Turnpike Company*, 203 Pa. 511, 53 A. 349 (1902), involving a contest over wrongful death proceeds between a widow and the decedent's surviving children, all of whom were emancipated adults at the time of their father's death. In holding that the children were outside the compensatory scheme of the Act, the court stated:

"The claim of appellants is founded on too broad and too literal an application of the concluding clause of the sentence [incorporating the intestate method of distribution]. Appellants are children of the deceased, and as such would share in his estate of intestacy . . . But the [distribution] provision, read in connection with the whole act . . . is not so broad as this. The 'sum recovered shall go to them' [in accordance with the intestacy laws] is the phrase, and by 'them' is meant the persons entitled to recover it. The provision is not for a further right of action, but only for distribution in an action previously given. . . . The Act first gives the right of action, and then prescribes the mode of distribution of the sum recovered, but that necessarily means distribution among those entitled to sue. It would be absurd to suppose that in the same sentence the statute meant to give part of the damages to those to whom it had denied the right of action." Id., 203 Pa. at 513, 53 A. at 349–350.

Additional support is found in several lower court decisions, in each of which the court limited distribution to those children who could show pecuniary loss. *Arndt's Administrator v. Davis*, 34 D. & C.2d 444 (1964); *Vogelgesang Estate*, 48 Schuy.Leg.Rec. 91 (1952); *Leiby v. Hanlon*, 24 D. & C. 508 (1935).

▮ Since the stipulation of facts agreed to by both parties disclose that the appellant was an emancipated adult at the time of her father's death, that she had not resided with him since she was eight months old and that she had never since that time received financial support from him, the appellant is not entitled to share in the distribution of the settlement proceeds of the wrongful death action brought by her deceased father's administratrix.

The order entered below denying the appellant's exceptions to the schedule of distribution is affirmed.

GATES, J., files a concurring opinion.

GATES, Judge, concurring:

I concur in the result reached by the majority because an intermediate appellate court is compelled to follow the teaching of the ultimate appellate court in the judicial system. The Pennsylvania Supreme Court in *Seymour v. Rossman*, 449 Pa. 515, 521, 297 A.2d 804, 807 (1972), makes it unmistakably clear that:

" . . . Where decedent is survived by two [2] classes of relatives, one which has suffered a pecuniary loss by reason of his death and the other of which has not, the class suffering the loss is entitled to the entire recovery to the exclusion of the class which has suffered no loss. *Armstrong v. Berk*, 96 F.Supp. 182 (E.D.Pa.1951)."

The statement in *Seymour v. Rossman*, supra, is, of course, dictum and not directly applicable, since the issue there involved the apportionment of the proceeds of a Wrongful Death Action between a widow who admittedly sustained a greater loss than a surviving dependent daughter.

Nonetheless, I believe that the earlier cases upon which the court relied were improperly decided. To me the legislative intent in directing the distribution of the funds recovered under the Wrongful Death Act is unmistakably clear. Distribution under the Wrongful Death Act " . . . shall go to them in the proportion they would take his or her personal estate in case of intestacy . . . "[1]

Under the Intestate Act[2], Linda Civitella, the appellant, would be entitled to a share in her deceased father's estate without regard to the fact that she is his daughter by a prior marriage and has lived apart from his household and received no support from him. Nonetheless, the decisional law in Pennsylvania has created two (2) classes of intestate heirs for the purpose of receiving benefits under the Wrongful Death Act despite its plain language. In doing so it seems clear to me that the courts have strayed far from the letter

1. Act of April 26, 1855, P.L. 309, § 1, as amended (12 P.S. § 1602).

2. Act of June 30, 1972, P.L. 508, No. 164, effective July 1, 1972 (20 Pa.C.S.A. §§ 2101, 2102 and 2103).

of the Wrongful Death Act and, under the guise of judicial interpretation, have rewritten the Act.

Undoubtedly, the Wrongful Death Act, as I would interpret it, is inequitable, at least insofar as the present action is concerned. But if we are to maintain that most desirable distinction between legislating and judicial interpreting we should beseech the General Assembly to address these changes by legislative amendment to the Wrongful Death Act. I am not alone in this view. See the concurring opinion by Montgomery, J. in *Seymour v. Rossman*, 220 Pa.Super. 92, 283 A.2d 495 (1971) and the concurring opinion by Mr. Justice Nix in *Seymour v. Rossman*, 449 Pa. 515, 297 A.2d 804 (1972).