J-A04013-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| ELLESIA BLAQUE, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF HERBERT F. MCCRACKEN, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CHESTNUT HILL HOSPITAL AND TRI-COUNTY EMERGENCY PHYSICIANS LLC AND AMANDA HOWELL, M.D. AND JENNIELYN BUMANLAG, M.D. AND DAVID M. SCHWARTZ, M.D. AND MENA ABRAHIM, M.D. AND DAVID JASLOW, M.D. AND RYAN BURKE, M.D. AND JOSEPH W. PRICE, M.D. AND JOSEPH W. PRICE & ASSOCIATES AND UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM AND TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | |
| Appellees | No. 2382 EDA 2016 |

Appeal from the Judgment Entered September 22, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2013 No. 1763

BEFORE: SHOGAN, SOLANO, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED MARCH 31, 2017**

In this medical malpractice action, Appellant, Ellesia Blaque, individually and as administratrix of the estate of Herbert F. McCracken ("Mr. McCracken" or "Decedent"), appeals from the judgment entered on

---

[*] Retired Senior Judge assigned to the Superior Court.

September 22, 2016, in favor of Chestnut Hill Hospital, Tri-County

Emergency Physicians, LLC, Amanda Howell, M.D., Jennielyn Bumanlag,

M.D., David M. Schwartz, M.D., Mena Abrahim, M.D., David Jaslow, M.D.,

Ryan Burke, M.D., Joseph W. Price, M.D., Joseph W. Price & Associates,

University Of Pennsylvania Health System, and Trustees of The University of

Pennsylvania (collectively "Appellees").  After careful review, we affirm.

The trial court set forth the relevant facts and procedural background

of this matter as follows:

> The medical care at issue in this litigation involves the treatment of [Mr. McCracken] at the emergency department of [Appellee] Chestnut Hill Hospital on December 12, 2012. Mr. McCracken was a 75 year old man who presented to the emergency department at 5:27 a.m. with complaints of 10/10 abdominal pain and diarrhea over the past two days. (N.T. 2/17/16, afternoon, at 107). Mr. McCracken was first seen by [Appellee] Dr. Ryan Burke. In his examination of Mr. McCracken, [Mr. McCracken] denied abdominal pain. (N.T. 2/16/16, afternoon, at 12). Dr. Burke noted "he believes he ate something bad" and that Mr. McCracken was requesting "pain medication just to feel better." (N.T. 2/17/16, afternoon, at 121). Dr. Burke diagnosed Mr. McCracken with diarrhea, acute diverticulitis, small bowel obstruction, dehydration, gastroenteritis, acute exacerbation of irritable bowel syndrome, acute is[c]hemic bowel, acute exacerbation of inflammatory bowel disease, and hepatitis. (N.T. 2/19/16, Afternoon, at 32-35). Dr. Burke ordered an IV for saline based on concerns for diarrhea and dehydration, Bentyl for colon spasms, and lab work. (Id. at 37).
>
> At 7:23 a.m., Dr. Burke endorsed Mr. McCracken to [Appellee] Dr. David Jaslow. (N.T. 2/16/16, Afternoon at 20). Dr. Burke's recommendation for Dr. Jaslow was for Mr. McCracken to be discharged when all the lab work results were completed. (N.T. 2/19/16, Afternoon, at 22). Dr. Jaslow reassessed Mr. McCracken and rendered a clinical impression of diarrhea. (N.T. 2/22/16, afternoon, at 140). Dr. Jaslow ordered Mr. McCracken discharged at 7:47 a.m. (N.T. 2/19/16, afternoon, at 105).

Nurse Serena Whitfield who assessed Mr. McCracken at discharge noted "Pt c/o of abdominal pain 10/10 discussed with Dr. Jaslow, pt willing to take Ibuprofen, one 600 mg given along with script given during discharge for Motrin 800 mg per Dr. Jaslow." (N.T. 2/22/16, morning, at 95).

Mr. McCracken returned to the hospital at 7:18 p.m. on December 13, 2012 and was diagnosed with an acute [gastro-intestinal ("GI")] bleed. Despite treatment and surgeries over the next few days, Mr. McCracken passed away on December 24, 2012. His Patient Data Sheet listed the diagnosis as "GI Bleed, End Stage Liver Disease." (N.T. 2/17/16, afternoon, at 80).

[Mr.] McCracken's wife, Elizabeth McCracken, initiated this medical malpractice litigation on August 16, 2013. After the death of Elizabeth McCracken, [Mr.] McCracken's daughter, [Appellant], was substituted as the plaintiff.

The Honorable Denis P. Cohen, Judge of the Court of Common Pleas, presided over a jury trial from February 12, 2016 until February 24, 2016. On February 24, 2016, the jury returned a verdict in favor of [Appellees], finding that Dr. Burke, Dr. Jaslow, and Chestnut Hill hospital were not negligent.

[Appellant] filed a Post-Trial Motion on March 4, 2016 and a Supplemental Post-Trial Motion on March 7, 2016. On May 5, 2016, this Court issued an order requiring the parties to file briefs in support of their motions with citations to the relevant portions of the notes of testimony. This Court heard oral argument on June 17, 2016. After careful consideration of the issues raised by the parties, all Motions for Post-Trial Relief are DENIED in their entirety.

Memorandum in Support of Orders Denying All Motions for Post-Trial Relief,

7/7/16, at 1-3 (emphasis omitted).[1]

_____

[1] The trial court's August 19, 2016 Pa.R.A.P. 1925(a) opinion incorporates the July 7, 2016 Memorandum in Support of Orders Denying All Motions for Post-Trial Relief as the basis for its decision.

- 3 -

On July 27, 2016, Appellant filed a notice of appeal that was premature as judgment on the verdict had not yet been entered. On September 14, 2016, this Court entered an order directing Appellant to *praecipe* for the entry of judgment and informed Appellant that the notice of appeal would be deemed timely upon the subsequent entry of judgment pursuant to ***Johnston the Florist, Inc. v. TEDCO Construction Corp.***, 657 A.2d 511 (Pa. Super. 1995). Order, 9/14/16. Appellant promptly filed a *praecipe* for entry of judgment on the verdict, and on September 22, 2016, judgment was entered, thus making Appellant's notice of appeal timely.

On appeal, Appellant presents seven issues for this Court's consideration:

(1) Whether the Trial Judge committed an error of law, and abused his discretion in granting the Motion in Limine of Appellee CHHS Hospital Company, LLC d/b/a Chestnut Hill Hospital, to preclude any evidence or reference at the time of trial to [Appellant] being a beneficiary to the Estate of [Mr.] McCracken, and the Joinder Motion of Appellees Ryan Burke, M.D., David Jaslow, M.D., and Tri-County Emergency Physicians, LLC (Control Number 16013440), and striking with prejudice [Appellant's] claims under the Wrongful Death Act, where the Trial Judge erroneously found, based on his reliance on Manning v. Capelli, 270 Pa. Super 207, 411 A2d 252 (1979), that [Appellant's] voluntary emancipation at the age of 16 and lack of evidence of financial dependence on [Appellant's] Decedent at the time of death, precluded her from recovering under the Wrongful Death Act for the monetary value of such services as guidance, tutelage, and moral upbringing that [Appellant] would have received had the death not occurred, which was caused by Appellees' negligence;

- 4 -

(2) Whether the Trial Judge committed an error of law, and abused his discretion in (a) dismissing Juror Number 7 after closing arguments based on Juror Number 7 having informed the Court after jury selection and several days before closing arguments that she had been to the Emergency Department ("ED") of Bryn Mawr Hospital with abdominal pain and headache, (b) dismissing Juror Number 7 without questioning said juror as to whether or not she could be objective, and (c) dismissing Juror Number 7 where there was no prejudice to either party from Juror Number 7 having been to the ED with one symptom-abdominal pain, that was an issue in the case;

(3) Whether the Trial Judge committed an error of law, and abused his discretion in imposing a compressed timetable of February 24, 2016, for completion of trial, completion of jury deliberation, and for the jury to render its verdict, resulting in the jury rushing to complete jury deliberations and render a verdict before the end of February 24th or risk having to return to Court five (5) days later on Monday, February 29th to continue with jury deliberations and render a verdict;

(4) Whether the Trial Judge committed an error of law, and abused his discretion in permitting the defense to present evidence of Decedent's continuing use of alcohol after being diagnosed with cirrhosis allegedly as it relates to life expectancy, where it allowed the defense, over [Appellant's] counsel's objections, and contrary to the Court's order, to characterize the Decedent's behavior as alcohol abuse;

(5) Whether the Trial Judge committed an error of law, and abused his discretion in refusing to take judicial notice, and charge the jury on the obligations under Pennsylvania law for an emergency department to have and enforce policies and procedures governing care of patients in the emergency department;

(6) Whether the Trial Judge committed an error of law, and abused his discretion in precluding [Appellant] from testifying at trial to the emotional grief and suffering [Appellant] and/or her siblings endured as a result of the death of her father, particularly where [Appellant] and her siblings had physically witnessed the terrible pain and suffering their father was undergoing in the hospital prior to his death on December 24, 2012; and

(7) Whether, based on the overwhelming evidence presented at trial by [Appellant], through the testimony of the Appellee physicians, defense nursing fact witness, and through expert witnesses, makes it not possible for two reasonable minds to disagree that the verdict should have been rendered in favor of [Appellant] and against the Appellees.

Appellant's Brief at 5-6.

In Appellant's first issue, she avers that the trial court erred in granting Appellees' motion *in limine*. The order granting the motion *in limine* precluded any evidence regarding Appellant being a beneficiary of Mr. McCracken's estate and struck with prejudice Appellant's claims under the Wrongful Death Act.

A motion *in limine* is a pretrial mechanism to obtain a ruling on the admissibility of evidence, and it gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, preventing the evidence from ever reaching the jury. ***Parr v. Ford Motor Co.***, 109 A.3d 682, 690-691 (Pa. Super. 2014) (citation omitted). "A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review." ***Id***. (citation and quotation marks omitted).

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Id*. (internal citations omitted). "In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id*. (internal citations and quotation marks omitted).

In ruling on the motion *in limine*, the trial court held that Appellant was precluded from recovering under the Wrongful Death Act (42 Pa.C.S. § 8301) pursuant to *Manning v. Capelli*, 411 A2d 252 (Pa. Super. 1979). In *Manning*, this Court discussed the Wrongful Death Act and held that "only those persons who stand in a family relation to the deceased are statutorily authorized to recover damages." *Manning*, 411 A.2d at 270. A family relation:

> exists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts. The term family relation as thus used does not embrace its comprehensive definition, but is confined to certain phases of family relation between the persons named in the act. . . . Before there can be any recovery in damages by one in that relation for the negligent death of another in the same relation, there must be a pecuniary loss.

*Id*. (quoting *Gaydos v. Domabyl*, 152 A. 549, 551-552 (Pa. 1930) (internal quotation marks omitted)).

Here, the trial court concluded that Appellant's voluntary emancipation at the age of sixteen, her complete lack of financial dependence on Mr. McCracken since her emancipation, and the fact that she never resided with him, evidenced the absence of a family relation. Memorandum in Support of

Orders Denying All Motions for Post-Trial Relief, 7/7/16, at 4. However, Appellant argues that "a beneficiary may recover the 'monetary value of such services as guidance, tutelage, and moral upbringing.'" Appellant's Brief at 22-23. We disagree, because in order to be entitled to such non-pecuniary damages, Appellant was required first to show a pecuniary loss. ***Manning***, 411 A.2d at 255.

The trial court succinctly addressed this issue and Appellant's demand for non-pecuniary damages as follows:

> an individual must first show pecuniary damages before he or she is entitled to recover for non-pecuniary losses such as loss of society and companionship under the Wrongful Death Act. See, e.g., Manning, 411 A.2d at 255 (finding that where the appellant was an emancipated adult at the time of her father's death, she had not resided with him since she was eight months old, and since that time she had not received financial support from him, the appellant is not entitled to share in the distribution of the settlement proceeds of the wrongful death action); Arndt's Adm'r v. Davis, 34 Pa. D. & C. 444 (Pa. Com. Pl. 1964) (finding that net proceeds recovered by an administrator in a wrongful death action are properly disbursed only to decedent's widow and dependent children, to the exclusion of the emancipated children). As such, [Appellant] has not shown any pecuniary damages and thus cannot be considered a beneficiary under the Wrongful Death Act.

Memorandum in Support of Orders Denying All Motions for Post-Trial Relief, 7/7/16, at 4-5.

The trial court concluded that Appellant had no family relationship or expectancy of any interest in Mr. McCracken's estate. Moreover, Appellant has failed to establish that the trial court erred or abused its discretion in

- 8 -

reaching this conclusion. Accordingly, Appellant is entitled to no relief on this claim of error.

Next, Appellant asserts that the trial court erred in discharging Juror Number Seven after closing arguments when Juror Number Seven informed the trial court that she had just recently presented to the emergency department of a local hospital with abdominal pain. Appellant argues this error was compounded when Juror Number Thirteen replaced Juror Number Seven, and Juror Number Thirteen became jury foreperson. Appellant's Brief at 44. Appellant now asserts that the trial court erred in replacing Juror Number Seven, an African-American woman, with alternate Juror Number Thirteen, a Caucasian male who was engaged to a medical student. Appellant avers that this was an error necessitating judgment notwithstanding the verdict ("JNOV") or a new trial. *Id*. at 45.

A trial court's decision to discharge a juror will not be disturbed on appeal absent an abuse of discretion. *Bruckshaw v. Frankford Hosp. of City of Philadelphia*, 58 A.3d 102, 106 (Pa. 2012). Additionally, when reviewing an order denying a motion for JNOV:

> [w]e must view the evidence in the light most favorable to the verdict winner and give the verdict winner the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. We apply this standard in all cases challenging the grant of a motion for Pennsylvania law makes clear that a judgment notwithstanding the verdict is proper only in clear cases where the facts are such that no two reasonable minds could disagree that the verdict was improper. Questions of credibility and conflicts in evidence are for the fact-finder to resolve. This Court will not substitute its judgment

based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned.

***Dubose v. Quinlan***, 125 A.3d 1231, 1238 (Pa. Super. 2015) (quotation marks and internal citations omitted).  In reviewing a trial court's denial of a motion for a new trial, we apply the following standard of review:

> It is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. Thus, when analyzing a decision by a trial court to grant or deny a new trial, the proper standard of review, ultimately, is whether the trial court abused its discretion. Moreover, our review must be tailored to a well-settled, two-part analysis: We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***Czimmer v. Janssen Pharmaceuticals, Inc.***, 122 A.3d 1043, 1051 (Pa. Super. 2015) (quotation marks omitted).

After review, we conclude that the trial court committed no abuse of discretion in dismissing Juror Number Seven.  The trial court explained the rationale for dismissing Juror Number Seven as follows:

> Juror Number 7 informed the court officer that she had gone to the emergency department of Bryn Mawr Hospital to be treated for abdominal pain. Although Juror Number 7 certainly did not want to go to the emergency department for abdominal pain, Juror Number 7's visit to an emergency department for treatment for abdominal pain conflicted with the Court's instructions to jurors during trial. The Court instructs the jurors during preliminary instructions:
>
>> Do not visit the location discussed in the case and do not conduct independent research or investigation

about the parties, witnesses, lawyers or any other issue about the case. You must decide all questions of fact only based upon the evidence received in this trial and not from any other source.... During this trial, I must decide that the information you hear and the exhibits you see are sufficiently reliable to be admissible under the Rules of Evidence and the law. Relying on any other information you obtain outside the courtroom is not only in violation of these rules, but it's unfair because the parties would not have the opportunity to refute it, explain it or correct it. I specifically instruct you that you're not to conduct any searches or research that may produce any information about the case or the parties or the attorneys involved in the case.[1] (N.T. 2/16/16 at 65-66).

[1] These instructions come from Pennsylvania Suggested Standard Civil Jury Instructions 11.180.

By visiting a hospital emergency department for treatment for abdominal pain, Juror Number 7 was experientially obtaining additional information about one of the central issues in the case[:] the standard of care for emergency room doctors treating a patient who complains of abdominal pain. "A challenge for cause should be granted when the prospective juror has such a close relationship, familial, financial, or **situational**, with the parties, counsel, victims, or witnesses that the court will presume a likelihood of prejudice." Cordes v. Associates of Internal Med., 87 A.3d 829, 833 -34 (Pa. Super. 2014) (citing McHugh v. P & G Paper Prods. Co., 776 A.2d 266, 270 (Pa. Super. 2001)). This Court discharged Juror Number 7 because she had experienced the same situation as the decedent by presenting to an emergency department with complaints of abdominal pain. The Court determined that it was highly doubtful that Juror Number 7 could possibly make a decision based solely upon the evidence presented at trial.

Unlike in Bruckshaw v. Frankford Hosp. of City of Philadelphia, 58 A.3d 102, 105 (Pa. 2012) where a court officer removed and substituted a juror without informing the Court or the parties, in the instant case, the Court informed the parties on the record that it would be removing Juror Number 7 and the reasons for her removal:

- 11 -

The Court: As to Juror Number 7, I would note that if during jury selection we had a juror who came to us who had just been -- let's say a week before this trial -- had just admitted her herself into an ER with abdominal pain, I would excuse that juror for cause. The Court would doubt whether that person could be fair and impartial either consciously or unconsciously because the person went through the same or similar experience. Here because the juror has actually heard the evidence already and the Court has heard the evidence and obviously there are all sorts of issues before the jury here about whether doctors and the nurse and the hospital acted appropriately, given what happened to a patient who had stomach or abdominal pain, ten/ten, who said he had ten/ten, pain. There's even more reason now, the Court having heard the evidence, and as the jurors have heard the evidence, the Court is even more concerned. So the Court appreciates the objection by [Appellant] -- and [Appellant's] attorney can preserve this for appeal – but in the Court's best judgment, the Court has to excuse Juror Number 7.

[Appellant's Counsel]: Your Honor, may I have a moment to put on the record that, in fact, I strenuously object to Juror Number 7 being removed because she was not questioned as to whether she would, in fact, be unbiased and without prejudice in this case after hearing the evidence, notwithstanding the fact that she had been to the emergency room, Your Honor.

The Court: I would assume for the purpose of this and I agree we've not done that because the Court doesn't think that's the key consideration. So I think the key consideration is that she had this experience. It's too [eerily] similar to the facts in this case right smack in the middle of the trial. So the Court in the exercise of the Court's discretion, the Court is excusing her. It just doesn't seem appropriate to have that juror who had the similar experience in terms of abdominal discomfort, going to an ER right smack in the middle of a trial with abdominal

- 12 -

> discomfort in the ER. So even if she said, yes, I could put that aside and be fair and impartial, that's not -- because of the circumstances, that is not something that would make a difference in the Court's evaluation. I appreciate your mentioning that, but that's why I want to put it on the record. It wouldn't matter to the Court whether -- whatever said, she could be fair or not fair, I'm concerned that may even the most subconsciously affect her because she went through a very similar experience with the case right here. (N.T. 2/24/16 at 110-112).

> In Bruckshaw, the Supreme Court of Pennsylvania held that "the removal of a juror can only be done by a trial court, on the record, in open court, with notice to the parties, for cause." 58 A.3d at 113. The removal of Juror Number 7 was therefore proper in this case because the Court explained on the record its reasons for removing Juror Number 7 for cause and the Court's decision should be deferred to on appeal. See id. at 111, 113.

> After the Court properly discharged Juror Number 7, the Court followed the fairest procedure in seating the first alternate, Juror Number 13. See id. at 113 ("Choosing an alternate arbitrarily, rather than in order, calls into question the decision to choose one alternate over another."). If [Appellant] believed that Juror Number 13 was biased based upon his engagement to a medical student, [Appellant] could have placed an objection on the record at the time of trial. Because there was no objection on the record to [J]uror [N]umber 13 serving as a juror, this objection is waived. See Pa. R.A.P. 302(a).

Memorandum in Support of Orders Denying All Motions for Post-Trial Relief, 7/7/16, at 5-7.

Juror Number Seven reported that she had visited the emergency department at Bryn Mawr Hospital. This experience allowed her to observe first-hand that hospital's treatment and care for a person presenting to an emergency department in abdominal pain and could have impacted her understanding of hospital protocols. Accordingly, we discern no abuse of

- 13 -

discretion in the trial court removing Juror Number Seven and replacing her with Juror Number Thirteen. Additionally, we further agree with the trial court's conclusion that Appellant's failure to object to Juror Number Thirteen being seated as a potential juror waives any issues Appellant may now have with Juror Number Thirteen being called to replace Juror Number Seven, his race, or his personal relationships. Accordingly, we discern no error of law or abuse of discretion in the trial court dismissing Juror Number Seven. **Bruckshaw**, 58 A.3d at 106. Because we conclude that there was no error of law or abuse of discretion, there was no basis upon which to grant a JNOV or a new trial. **Dubose**, 125 A.3d at 1238; **Czimmer**, 122 A.3d at 1051.

In her third issue, Appellant alleges that the trial court erred when it imposed a deadline for completion of the trial and rushed the jury to finish its deliberations. Appellant alleges:

> It is very probable that the Trial Judge, by stating his intention to have trial, jury deliberations, and verdict concluded by Wednesday, February 24, 2016, in light of the Trial Judge's commitments on Thursday, February 25th, and February 26th unrelated to trial, and by sending them out to deliberate on Wednesday, February 24th around noon time, the jury concluded that there was a *de facto* limit on the time the jury had available to deliberate and come to a verdict.

Appellant's Brief at 49. We conclude that Appellant's claim is speculative and a misstatement of the facts. The notes of testimony reveal that the trial court informed the jury as follows:

> THE COURT: So, ladies and gentlemen of the jury, I've spoken to counsel, and they've have all agreed that I should ask you this question, so I have a question actually for your decision.

- 14 -

This has nothing to do with the facts of the case, but it's more in the line of housekeeping.

If you recall in the beginning of the case at the time of jury selection, I told you all that we'd work no later than 5:00 o'clock. Do you recall that? I recall that. So we have a possibility that I wanted to raise to you and ultimately it's your decision. Counsel and the Court, we're all very -- we're trying to focus on getting everything done by Wednesday of next week, because if we don't get done by Wednesday of next week, unfortunately, we have to run into Monday the following week, so everyone is working very hard to try to get this done by having the whole matter done and complete by Wednesday of next week.

To accomplish that, we're all trying to find extra time in order to do that. That's one reason why I told everyone to be here at 10:30 in the morning. Originally, I was supposed to be in criminal court until like 1:30 in the afternoon, but I did that quickly so I could come here and squeeze in a couple of extra hours in the morning, so it's more likely we'd be done on Wednesday.

Obviously, we can't guarantee anything. It's not like a warranty when you buy a product and then you can return it to the manufacturer. We can't ... warrant anything. A trial is a human process. But our hope is if we were successful enough to prevail upon you and if you were so gracious to stay on Monday till 6:00 p.m., we might be able to wrap this up on Wednesday, because our goal would be for you not to come back the following week, because that's a real inconvenience, and I realize at the same time everything is about a trial, which we're taking away from your lives. As I realize and counsel realizes, every day is an inconvenience on this case and every case with a jury trial. So we appreciate the good service of the citizens.

Now, I appreciate at the same time that there may be issues of childcare, elder care or something like that that may not make it possible to stay till 6:00, but if it is possible to stay till 6:00, it will add one additional hour of testimony that will make it -- that will be helpful in our goal to try and get everything wrapped up by Wednesday. So I just ask if you let us know that today, we can let the court reporter know that as well.

- 15 -

Is there a problem for anybody? I know no one is happy. I'm not asking who's happy.

THE JUROR: Can I ask a question?

THE COURT: Yes.

THE JUROR: So if we're going to stay until 6:00, are we going to get like dinner or --

THE COURT: Then it would be much later.

THE JUROR: -- a lunch allowance or overtime?

THE COURT: Unfortunately, there's nothing in the budget. We're not budgeted for a dinner or something like that, so we can't offer that to you. But our goal would be -- and, again, I can't promise, but [our] goal is we're trying to avoid you coming in on Monday, which is another day.

THE JUROR: But we're not going to stay until 6:00 on these days and still have to come in --

THE COURT: As I said, I can't promise anyone anything, but I can tell you what the goal is and the goal is to try to have everything done by Wednesday so you don't have to come back on Monday. All of us, counsel, and the Court, and the court staff, we're all very appreciative of your time, and we're trying to save -- we're doing everything we can to try to save you from coming in on Monday.

So why don't we let you think about that. We'll go on with the testimony and then we can address it at the end of the day.

N.T., 2/19/16, at 66-69.

We conclude that Appellant's allegation is not supported by the record. A review of the trial court's statement to the jurors reflects a "housekeeping" issue wherein the trial court informed jurors that concluding on February 24th was an option; it was not a mandate. Moreover, the record establishes

that the parties agreed to the trial court's proposed timetable, and Appellant made no objection. It is well settled that:

> [r]equiring a timely specific objection to be taken in the trial court **will ensure that the trial judge has a chance to correct alleged trial errors**. This opportunity to correct alleged errors at trial advances the orderly and efficient use of our judicial resources. First, appellate courts will not be required to expend time and energy reviewing points on which no trial ruling has been made. Second, the trial court may promptly correct the asserted error. With the issue properly presented, the trial court is more likely to reach a satisfactory result, thus obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellate review. Third, appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.

*Faherty v. Gracias*, 874 A.2d 1239, 1249 (Pa. Super. 2005) (emphasis in original) (quoting *Dilliplaine v. Lehigh Valley Trust Co.*, 322 A.2d 114, 116-117 (Pa. 1974)); and *see* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").[2] Accordingly, any objection to the trial court's explanation as to the time in which the trial was to take place and conclude is waived.

---

[2] Assuming, for the sake of argument, that we were to consider this issue on its merits, we would be constrained to point out that Appellant's bald claim of error fails to establish any prejudice other than that Appellant was displeased with the verdict.

In her fourth issue Appellant avers that the trial court erred and abused its discretion by permitting the defense to present evidence of Mr. McCracken's use of alcohol after being diagnosed with cirrhosis over Appellant's objection. We disagree.

We reiterate that the admissibility of evidence is left to the sound discretion of the trial court, and we will not reverse the trial court's decision absent an abuse of that discretion. *Parr*, 109 A.3d at 690. As we previously noted, an abuse of discretion may not be found merely because an appellate court might have reached a different conclusion; rather, an abuse of discretion requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. *Id*. at 690-691.

Prior to trial, Appellant filed a motion *in limine* to preclude, *inter alia*, reference to Mr. McCracken's alcohol use. On February 17, 2016, the trial court entered an order granting in part, and denying in part, Appellant's motion *in limine* stating as follows:

1. [Appellees are] precluded from the use of the words '**alcohol abuse**' or characterizing the decedent's behavior as such. [Appellees are] permitted to characterize the decedent's behavior as '**alcohol use**.' [Appellees are] further permitted to present evidence regarding decedent's use of alcohol following a diagnosis of cirrhosis of the liver and how that continued use relates to the decedent's life expectancy.

Order, 2/17/16 at unnumbered 1, ¶ 1 (emphases added).

On appeal, Appellant argues that evidence of Mr. McCracken's alcohol use was prejudicial and encouraged the jury to conclude that he contributed to his injuries and subsequent demise. Appellant's Brief at 51. However, as noted above, the trial court permitted reference to Mr. McCracken's alcohol use as it related to life expectancy. Appellant fails to illustrate how this ruling was an abuse of discretion. Moreover, the issue of life expectancy was an issue of damages, and because the jury did not reach damages since Appellees were not found to be negligent, we discern no prejudice. Finally, we note that at trial, Appellees did reference Mr. McCracken's **use** of alcohol. N.T., 2/17/16, Afternoon, at 26-36. Appellant claims that this testimony came in over Appellant's objection as it highlighted Mr. McCracken's **abuse** of alcohol. Appellant's Brief at 52-53. The record reflects no objection by Appellant on this issue. *See* N.T., 2/17/16, Afternoon, at 26-36. We conclude that Appellant is entitled to no relief.

In her fifth claim of error, Appellant argues that the trial judge committed an error of law or abused its discretion in refusing to take judicial notice of 28 Pa.C.S. § 117.41[3] and charge the jury on the obligations an emergency department has to enforce policies and procedures governing the

_____

[3] In her brief, Appellant cites to 28 Pa.C.S. § 117.41. However, we conclude that Appellant intended to cite to 28 Pa. Code § 117.41, which discusses emergency patient care.

care of patients in the emergency department. Appellants Brief at 53. We conclude that the trial court committed no error.

> Our standard of review regarding jury instructions is limited to determining whether the trial court committed a clear abuse of discretion or error of law which controlled the outcome of the case. Error in a charge occurs when the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. Conversely, a jury instruction will be upheld if it accurately reflects the law and is sufficient to guide the jury in its deliberations.

> The proper test is not whether certain portions or isolated excerpts taken out of context appear erroneous. We look to the charge in its entirety, against the background of the evidence in the particular case, to determine whether or not error was committed and whether that error was prejudicial to the complaining party.

> In other words, there is no right to have any particular form of instruction given; it is enough that the charge clearly and accurately explains the relevant law.

*Czimmer*, 122 A.3d at 1052 (internal quotation marks and citations omitted).

As stated, Appellant argues that the trial court should have taken judicial notice of 28 Pa. Code § 117.41 and instructed the jury on that section. We note that "[t]he contents of the code, of the permanent supplements thereto, and of the bulletin, shall be judicially noticed." 45 Pa.C.S. § 506. The relevant section of the Pennsylvania Code provides as follows:

> Emergency patient care shall be guided by written policies and procedures which delineate the proper administrative and medical procedures and methods to be followed in providing emergency care. These policies and procedures shall be clear

- 20 -

and explicit; approved by the medical staff and hospital governing body; reviewed annually; revised as necessary; and dated to indicate the date of the latest review or revision, or both.

28 Pa. Code § 117.41(a).

The trial court addressed this issue as follows:

[Appellant] contends that this Court erred by not taking judicial notice of 28 Pa. [Code] § 117.41, which relates to policies and procedures for emergency patient care. First, [Appellant] has waived this issue as she failed to note in her brief where on the record she requested the judicial notice of this statute in violation of this Court's February 16, 2016 Order.[4] [Appellant] argues that "the contents of 28 Pa. [Code] § 117.41 would be instructive for the jury to understand that [Appellee] Chestnut Hill Hospital was required by statute to have written policies and procedures." However, [Appellant] failed to present evidence at trial that [Appellee] Chestnut Hill Hospital violated the standard of care by not having appropriate written policies. In fact, [Appellant's] expert, Dr. Paynter, who was qualified as an expert in corporate liability, testified that he did not review any policies and procedures of Chestnut Hill Hospital. (N.T. 2/19/16, morning, at 60 -61).

> [4] The Court is also confused by [Appellant's] argument regarding judicial notice of policies and procedures as [Appellant] inconsistently argues both that Dr. Burke failed to follow Chestnut Hill Hospital's policies and that Chestnut Hill Hospital did not have policies. On page 51, [Appellant] argues that Dr. Burke failed to document a treatment plan "despite a policy at Defendant Chestnut Hill Hospital that a patient's treatment plan be documented in writing …" However, on page 51, [Appellant] argues that [Appellee] Chestnut Hill Hospital "failed to produce any policy, procedure, guideline, rule or protocol" and that [Appellee] Chestnut Hill failed to have the written policies and procedures required by 28 Pa. [Code] § 117.41.
>
> In [Appellant's] rebuttal to [Appellees'] closing statements, instead of arguing that Chestnut Hill Hospital did not have

- 21 -

appropriate policies and procedure, [Appellant] argued that the policies and procedures regarding chain of command were not followed:

> Policies and procedures was a non-issue?
> No, it wasn't a non-issue.
> The issue of the chain of command is a policy and procedure issue.
> In fact, their own expert, Dr. Kolecki, said, yeah, they have policy and procedure on chain of command.
> Ms. Whitfield said, I know the chain of command would mean they had a policy on it. It was not enforced.
> And he's telling you it's not an issue.
> Of course it was. (N.T. 2/24/16 at 98).

> Informing the jury that there is a law that requires emergency departments to have policies and procedures would only serve to confuse and mislead the jury when [Appellant] failed to present testimony that Chestnut Hill Hospital did not have the appropriate policies and procedures for emergency patient care. This Court therefore appropriately determined not to take judicial notice of 28 Pa. [Code] § 117.41. See Carter v. Adlesic. 2002 WL 34103072 (No. GD98-015779) (Pa. Com. Pl. Allegheny, January 28, 2002); ("45 Pa. C.S. § 506 does not mean that wherever a request for judicial notice of law is made, the court must read the provisions of a state regulation to the jury, irrespective of their relevance to the case at hand.").

Memorandum in Support of Orders Denying All Motions for Post-Trial Relief, 7/7/16, at 9-10. We find the case cited by the trial court is persuasive on this issue. *See Sysco Corp. v. FW Chocolatier, LLC*, 85 A.3d 515, 520 n.2 (Pa. Super. 2014) (stating that common pleas court decisions are not binding precedent for this Court, but they may be considered for their persuasive authority). In *Carter v. Adlesic*, 2002 WL 34103072 (Pa. Common Pleas (Allegheny), January 28, 2002), the court stated as follows:

It first should be noted that the type of judicial notice involved here (as Plaintiffs acknowledge in their brief), is judicial notice of law, not judicial notice of facts.

According to Leonard Packel & Anne Bowen Poulin, *Pennsylvania Evidence* § 221 (2d Ed. 1999):

> It is customarily the duty of the jury to find the facts. It is customarily the duty of the judge to find the law and present the law to the jury. This process of finding the law has been called judicial notice of law. Labeling this process judicial notice has very little practical utility for the law of evidence and may foster confusion in some cases.

Similarly, in the comment to Pennsylvania Rule of Evidence 201, it is noted that: "In determining the law applicable to a matter, the judge is sometimes said to take judicial notice of the law." (citing 21 Wright and Graham, *Federal Practice and Procedure* § 5102 (1977)), where it is also noted that:

> Judicial notice would be a sufficiently complicated concept if it were limited to facts; but due to the curious penchant of legal thinkers for using the same word to describe quite different phenomena, the judge who consults the advance sheets for the latest word from higher courts is said to be taking "judicial notice" of the law.

*Id*. at 461.

Thus, the fact that this state dental regulation was brought to my attention by judicial notice (as opposed to say, a point for charge), is not particularly significant in this case. Of course it is true that 45 Pa. C.S. § 506 states: "The contents of the code, of the permanent supplements thereto, and of the bulletin *shall* be judicially noticed." (emphasis added). This provision relieves the proposing party from the bother of bringing in witnesses to prove the existence of a regulation. (Thus, I accepted as true, without requiring any evidence on the subject, that the cited regulations were existing and valid state dental regulations.) **But this does not mean that wherever a request for judicial notice of law is made, the court must read the provisions**

> **of a state regulation to the jury, irrespective of their relevance to the case at hand.**
>
> The court still must analyze the regulation (as with all law) and determine its applicability to issues in the case and the facts adduced at trial. Here any minimal relevance was outweighed by the danger of misleading the jury.

*Carter v. Adlesic*, 2002 WL 34103072 (Pa. Common Pleas (Allegheny), January 28, 2002) (boldface emphasis added).

We discern no error in the trial court's denial of Appellant's request to take judicial notice of the Pennsylvania Code and charge the jury on section 117.41. Appellant argued that there were procedures that were not followed and also argued that there were no procedures at all. Thus, we discern no abuse of discretion in the trial court's conclusion that instructing the jury on 28 Pa. Code § 117.41 would have caused confusion.

In her sixth issue on appeal, Appellant avers that the trial judge erred and abused his discretion in precluding Appellant from testifying as to the emotional grief and suffering she and her siblings endured due to the death of Mr. McCracken. After review, we discern no abuse of discretion.

It is well settled that under the Wrongful Death Act, damages for mental suffering, grief, or distress of mind are not recoverable. *Gaydos*, 152 A.2d at 552. Thus, there was no error of law or abuse of discretion in the trial court precluding Appellant from testifying as to any grief or suffering she or her siblings endured. Moreover, we point out that if such testimony were permitted, it would be relevant only to damages and not causation. As

the jury concluded that Appellees were not negligent, damages were never at issue and, therefore, any error in precluding such testimony was harmless. *See Bensinger v. University of Pittsburgh Medical Center*, 98 A.3d 672, 683 n.12 (Pa. Super. 2014) (stating that an error is deemed harmless if the court determines that the error could not have contributed to the verdict).

In her final claim of error, Appellant argues that the trial court should have granted JNOV or a new trial based on the evidence. Appellant's Brief at 57. The standards we apply when reviewing a trial court's ruling on a motion for a new trial or JNOV were set forth above, and we need not restate them. *Czimmer*, 122 A.3d at 1051; *Dubose*, 125 A.3d at 1238.

Here, the record reveals that Appellant and Appellees called upon expert witnesses who testified as to whether Appellees met the standard of care. Appellant called Dr. Ronald Paynter as an expert, and he testified that Appellees' treatment fell below the standard of care because there was a delay in diagnosing Mr. McCracken's condition. N.T., 2/18/16, Morning, at 84-85. Dr. Paynter opined that a CT scan should have been conducted when Mr. McCracken presented in the emergency department on December 12, 2012. *Id*. at 59-60. Dr. Paynter also testified that Appellees deviated from the standard of care in prescribing Ibuprofen to Mr. McCracken as Ibuprofen can cause gastrointestinal bleeding. *Id*. at 78-81.

On cross-examination, Dr. Paynter testified that Mr. McCracken had been treated for an ulcer beginning in February of 2012, nearly ten months earlier. N.T., 2/18/16, Afternoon, at 11. However, Dr. Paynter conceded that Mr. McCracken may not have been bleeding when he presented at the emergency department on December 12, 2012:

> Q    So and it's your opinion, to a reasonable degree of medical certainty, that if a CT scan had been performed at sometime between 5:30 and 8:30 in the morning on the 12th, it would have been diagnostic for a bleeding ulcer, correct?
>
> A    It may not have been … bleeding at that point, but it would have been diagnostic of an abnormality that was causing the pain, yes, and would have likely shown some thickening of the area where the ulcer is forming or some inflammation.

*Id*. at 70. Nevertheless, Dr. Paynter maintained that a CT scan was warranted.

However, Appellees' expert, Dr. John Patterson, testified that the treatment rendered by Appellees, Dr. Burke and Dr. Jaslow, did not fall below the standard of care. N.T., 2/22/16, Morning, at 55. Dr. Patterson testified that when Mr. McCracken presented to the emergency department on December 12, 2012, a CT scan was not warranted. *Id*. at 78. Despite Mr. McCracken's complaints of pain, Mr. McCracken's abdominal exam was benign, and Mr. McCracken was in no distress. *Id*. Dr. Patterson concluded that based on Mr. McCracken's vital signs and the physical examination, a CT scan was unwarranted, and, therefore, Dr. Burke's treatment did not fall below the standard of care. *Id*. at 79. Moreover, and for these same

reasons, Dr. Patterson opined that a GI consult was unwarranted. *Id*. at 79-80. Finally, Dr. Patterson opined that Dr. Jaslow's decision to discharge Mr. McCracken and prescribe Ibuprofen was reasonable. *Id*. at 97. Ibuprofen was within the standard of care due to Mr. McCracken's medical history and existing liver damage as other pain medication is toxic to the liver. *Id*. at 99. Moreover, Dr. Patterson stated that the administration of Ibuprofen did not contribute to Mr. McCracken returning to the emergency department less than two days later, because it was such a short course of Ibuprofen. *Id*. at 100. Dr. Patterson noted also that subjective pain scales, where a patient rates his level of pain on a scale of one to ten, are not helpful and clinicians tend to use their own judgment in determining treatment. *Id*. at 103-104. Dr. Patterson concluded that the treatment Mr. McCracken received in the emergency department did not lead to his demise. *Id*. at 106.

As discussed above, JNOV can only be granted in a clear case where no two reasonable minds could differ. *Dubose*, 125 A.3d at 1238. Here, there were different conclusions reached by the experts, and the jury opted to credit the testimony of Appellees' expert. When viewed, as we must, in the light most favorable to the verdict winner, we discern no error or abuse of discretion. "This Court will not substitute its judgment based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned." *Id*. There was no error on the part of the trial court that prejudiced Appellant and required a new trial. *Czimmer*, 122 A.3d at 1051.

- 27 -

For the reasons set forth above, we discern no basis upon which to disturb the judgment entered in favor of Appellees. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2017